HELMKAMP v LIVONIA CITY COUNCIL

Docket No. 97439. Submitted March 3, 1987, at Detroit. Decided May 26, 1987.

Alan C. Helmkamp and David L. Ducharme, residents and electors of the City of Livonia, brought an action in the Wayne Circuit Court against the Livonia City Council and the Election Commission of the City of Livonia seeking a declaratory jugment and an order of mandamus compelling defendants to call a special election to fill a vacancy in the position of mayor. The trial court, Lucile A. Watts, J., issued an order of mandamus ordering defendants to call and conduct the special election sought by the plaintiffs. Defendants appeal. The trial court granted a stay of the proceedings pending disposition of the appeal. The facts indicate that Livonia Mayor Edward H. McNamara was elected Executive of Wayne County on November 4, 1986, with the term in that office to commence January 1, 1987. His term of office as mayor, however, was not due to expire until December 31, 1987, subsequent to the next regularly scheduled election on November 3, 1987. On November 6, 1986, the mayor submitted his resignation, effective midnight December 31, 1986. On November 19, 1986, the city council rejected a resolution to hold a special election to fill the mayoral vacancy. Upon the mayor's resignation, the president of the city council began serving as mayor pro tem.

The Court of Appeals *held:*

1. The trial court correctly concluded that plaintiffs had standing to bring this action. Plaintiffs were not required to show a substantial injury distinct from that suffered by the public in general.

2. The trial court abused its discretion in granting mandamus. The language of the city charter does not compel a special election, but allows the mayor pro tem to serve until the next

REFERENCES

Am Jur 2d, Elections §§ 200, 366, 367.

Am Jur 2d, Mandamus §§ 91, 388 *et seq.,* 490-494.

Am Jur 2d, Municipal Corporations §§ 110, 278.

See the annotations in the Index to Annotations under Elections and Voting; Mandamus; Municipal Corporations.

regular election. The council exercised its discretion and voted not to call a special election. There was no clear legal duty requiring a special election or a clear legal right in plaintiffs to the discharge of such a duty. The order of mandamus is vacated.

Reversed and remanded.

1. MANDAMUS — ELECTIONS — PARTIES.

Generally, in the absence of a statute to the contrary, a private person as relator may enforce by mandamus a public right or duty relating to elections without showing a special interest distinct from the interest of the public.

2. MANDAMUS — APPEAL.

Mandamus may issue where a plaintiff proves a clear legal right to the performance of the specific duty sought to be compelled and that the defendant has a clear legal duty to perform the action; the granting of mandamus is discretionary and will not be reversed absent an abuse of discretion.

3. MUNICIPAL CORPORATIONS — CHARTERS — JUDICIAL CONSTRUCTION.

Specific statements in a charter must be read as exceptions to general statements contained therein; one provision of a charter may not be construed in such a manner as to render another provision of no effect.

*Helmkamp, Ellis & Abraham* (by *Alan C. Helmkamp*), for plaintiffs.

*Harry C. Tatigian,* City Attorney, for defendants.

Before: M. J. KELLY, P.J., and SULLIVAN and P. R. JOSLYN,* JJ.

PER CURIAM. Defendants, City Council of Livonia and the Election Commission of the City of Livonia, appeal as of right from an order of mandamus, issued by the Wayne Circuit Court, requiring them to hold a special election to fill a vacancy in the position of mayor. We reverse.

The facts are not in dispute. On November 4,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

1986, Livonia Mayor Edward H. McNamara was elected Executive of Wayne County. His term in that office commenced January 1, 1987. His term of office as mayor of Livonia, however, was not to expire until December 31, 1987, subsequent to the next regularly scheduled mayoral election on November 3, 1987.

On November 6, 1986, Mayor McNamara submitted his resignation, effective midnight December 31, 1986. On November 10, 1986, the city council voted four to three to adopt a resolution empowering itself to appoint a new mayor from among the senior council members. Mayor McNamara vetoed the resolution, and the council failed to override the veto. Upon the effective date of McNamara's resignation, Robert E. McCann, president of the city council, began serving as mayor pro tem.

On November 19, 1986, the council had rejected a resolution to hold a special election to fill the mayoral vacancy. Subsequently, on November 25, 1986, plaintiffs, residents and electors of the city, filed the instant suit for a declaratory judgment and for an order of mandamus compelling defendants to call a special election. Following a hearing on defendants' motion for summary disposition, the circuit court, on December 18, 1986, issued the order of mandamus. Rejecting defendants' arguments to the contrary, the court concluded that plaintiffs had standing to bring this suit as electors and that a "fair interpretation" of the charter required a special election to fill the vacancy. The court thereafter granted a stay of the proceedings pending the disposition of the present appeal.

The threshold issue raised by defendants on this appeal is whether plaintiffs have standing to maintain this action. Both plaintiffs herein and the

court below relied heavily on *Amberg v Welsh,* 325 Mich 285; 38 NW2d 304 (1949), to support their respective conclusions that plaintiffs did indeed have standing.

In *Amberg,* the plaintiffs, as electors and signers of a petition to recall the mayor of Grand Rapids, were held to be proper parties in their suit seeking mandamus to compel the city clerk to conduct a recall election pursuant to the city charter. The *Amberg* Court, without elaboration, held that plaintiffs' right to bring suit was a matter of the trial court's discretion that had been properly exercised. 325 Mich at 291.

We agree that the lower court's reliance on *Amberg* was proper. *Amberg* is consistent with the following accepted statement of law:

> It is generally held, in the absence of a statute to the contrary, that a private person as relator may enforce by mandamus a public right or duty relating to elections without showing a special interest distinct from the interest of the public. [26 Am Jur 2d, Elections, § 367, p 180, see also 52 Am Jur 2d, Mandamus, § 390, pp 712-713.]

Consequently, defendants' assertions and citations to the contrary,[1] plaintiffs were not required to show a substantial injury distinct from that suffered by the public in general. The trial court's ruling on the standing issue was not erroneous.

The substantive issue raised on appeal is whether the lower court abused its discretion in granting mandamus. Mandamus may issue where a plaintiff proves a clear legal right to the performance of the specific duty sought to be compelled and that the defendant has a clear legal duty to perform the action. *BCS Ins Co v Comm'r of Ins,*

---

[1] See, e.g., *Menendez v Detroit,* 337 Mich 476; 60 NW2d 319 (1953).

154 Mich App 373, 377; 397 NW2d 552 (1986). The trial court's grant of mandamus is discretionary and will not be reversed absent an abuse of discretion. *Carlson v City of Troy*, 90 Mich App 543, 547; 282 NW2d 387 (1979).

Here, the trial court, although conceding that "the charter does not make a special election mandatory," concluded that a "fair interpretation" of the charter compelled one in this instance. We believe that the court abused its discretion in arriving at this conclusion and in consequently granting mandamus.

In reviewing the charter, we are mindful of the principle that

> [w]hen the language of a charter provision is unambiguous and specific it is controlling. In such a case, it is presumed that the framers of the charter, and the people of the city involved, intended that the provision be construed as it reads. That intent must prevail. *Kelly v Detroit*, 358 Mich 290, 295-296; 100 NW2d 269 (1960); *Detroit Fire Fighters Ass'n Local No 344, IAFF v Detroit*, 55 Mich App 276, 281; 222 NW2d 210 (1974), *lv den* 393 Mich 755 (1974). If a charter provision is ambiguous it must still be interpreted in a manner consistent with reason and with the goal of determining the purpose and intent of the framers and public. [*Detroit Fire Fighters Ass'n v Detroit*, 127 Mich App 673, 677; 339 NW2d 230 (1983).]

A number of charter provisions are relevant to the consideration of the instant issue. To begin with, the charter provides for a tripartite division of power, i.e., legislative, executive and judicial. Livonia Charter, ch II, § 3. The charter further provides for the orderly transition of power in the event of a mayoral vacancy. Chapter IV, § 6 reads in pertinent part:

Section 6. *President.* At the first regular meeting of the Council following each regular City election, the Council shall elect one of its members as President to hold office until the next regular City election and until his successor has been duly elected. *The President shall perform the duties of the Mayor when, on account of absence from the City, disability, or otherwise, the Mayor is temporarily unable to perform the duties of his office, and in case of vacancy in the office of Mayor, until such vacancy is filed by election. Whenever the President shall act as Mayor Pro Tem in excess of thirty (30) days, he shall receive such additional compensation as may be allowed by the Council.* The Mayor shall not receive any compensation for any continuous period of absence or disability on his part in excess of ninety (90) days.

Vacancy is defined in Chapter X, § 5:

Section 5. *Vacancy Defined.* In addition to other provisions of this Charter, a vacancy shall be deemed to exist in any office when an officer dies, resigns, is removed from office, moves his legal residence from the City, is convicted of a felony or judicially declared to be mentally incompetent.

The plain language of these provisions, read together, suggests that the president of the council assumes the responsibilities of the mayor upon a vacancy in that office and holds the position until the next election. In such an event, however, the following restrictions apply:

Section 6. *Mayor Pro Tem.* In case of the absence or disability of the Mayor, the President of the Council shall perform the duties of the Mayor during the period of such absence or disability: Provided, however, that he shall not have the power of veto; and shall not have the power to remove the director of any department during any

period in which he shall act in the capacity of Mayor until he has so acted for a period of thirty (30) consecutive days during such period, and no appointment made by him shall be permanent until such appointee shall have served for a period of sixty (60) days following his appointment. [Livonia Charter, ch V, § 6.]

Although the charter does not so specify, the circuit court held that the election referred to in chapter IV, § 6 must be a special election called for by the council, Livonia Charter, ch III, § 4,[2] as opposed to the next regularly scheduled general election. The court reasoned that such an interpretation was necessary to enforce the charter provisions providing for the preservation of the tripartite division of power[3] and for the veto power in the mayor.[4] This reasoning is misplaced and fails to recognize that specific statements in a charter must be read as exceptions to general statements and that one provision may not be construed in such a manner as to render another provision of no effect. *Brady v Detroit,* 353 Mich 243, 248; 91 NW2d 257 (1958). Although the charter provides that no person belonging to one of the city's governmental divisions may exercise powers that belong to another governmental division, the framers of the charter obviously intended an exception to apply when, upon a mayoral vacancy, the president of the council is called upon to serve as mayor pro tem and, with the exception of, inter

---

[2] Section 4. *Special Elections.* Special city elections shall be held when called by resolution of the Council . . . or when required by this Charter or the General Laws of the State.

[3] Livonia Charter, ch II, § 3, *supra.*

[4] See Livonia Charter, ch V, § 6, *supra,* which removes the power of veto from the mayor pro tem.

alia, the veto power, is entitled to exercise most of the powers of the mayor.

Our reading of the plain wording of the charter leads us to conclude that the language of chapter IV, § 6 does not compel a special election, but allows the mayor pro tem to serve until the next regular election. Alternatively, pursuant to chapter III, § 4, the council, *at its discretion,* may call a special election to fill the vacancy sooner. That the mayor pro tem does not possess the veto power is only a factor that is to be considered in the exercise of the council's discretion. Here, the council, whether or not it considered this factor, exercised its discretion and voted not to call a special election and to keep the vacancy filled by the mayor pro tem until the next general election.[5]

Absent a "clear legal duty" requiring a special election and a "clear legal right" in plaintiffs to the discharge of such a duty, the circuit court abused its discretion in granting mandamus. The order is consequently vacated.

Reversed and remanded.

---

[5] Thus, defendants did not violate MCL 168.6; MSA 6.1006 and MCL 201.37; MSA 6.717, cited by plaintiffs. These statutes merely define special elections and require a village or city to fill vacancies pursuant its charter. This the city has done.