DELEEUW v BOARD OF STATE CANVASSERS

Docket No. 257501. Submitted September 1, 2004, at Lansing. Decided September 3, 2004, at 9:05 A M.

Nick Deleeuw, Josh Twiest, Sean Devette, and Ryan Devette, filed an original action in the Court of Appeals against the State Board of Canvassers and the Secretary of State, seeking an order of mandamus to direct that the name of Ralph Nader be placed on the Michigan ballot for President of the United States for the November 2, 2004, election. Plaintiffs signed and circulated petitions to put Nader's name on the November ballot. In hearing a challenge to the petitions by Mark Brewer, an intervening party who is the Democratic Party Chairman in Michigan, the State Board of Canvassers failed to come to a decision on any of four motions relating to its approval or disapproval of the petitions, and, therefore, the plaintiffs also want the Court to compel, by mandamus, the board to find the petitions sufficient and to certify the petitions seeking to nominate Ralph Nader as an independent candidate for President. The Secretary of State has filed a motion for summary disposition.

The Court of Appeals *held*:

1. MCL 168.552 sets forth the authority and duties of the Board of State Canvassers. That statute does not permit the board to look behind the signatures to determine the motives of the individual signatories or the motives or desires of the candidate. The board breached its legal duty because the challenge failed to establish that there were fewer than thirty thousand valid signatures. The challenge considered by the board in this case related to a violation of election laws relating to fraud, a matter not within the scope of the board's review, but in the bailiwick of the Secretary of State to report to the Attorney General or a prosecutor.

2. Plaintiffs have standing to seek mandamus on the basis that they would suffer an imminent "injury in fact" if the Court did not intervene in this case. The plaintiffs circulated, signed, and filed petitions that the board would mute by its inaction, a decision in itself. The plaintiffs possessed a legally protected interest in

having their valid signatures effectuate their petition to qualify the named political candidate as mandated by law.

3. The plaintiffs failed to allege any improper conduct or any clear legal duty breached by the Secretary of State on which relief could be granted. Summary disposition for the Secretary of State is appropriate and granted.

Mandamus granted.

ELECTIONS — BOARD OF STATE CANVASSERS — NOMINATING PETITIONS.

The sole duty of the Board of State Canvassers with regard to nominating petitions is to determine whether the signatures on the petitions are valid, including those of the people who circulate the petitions, whether they are the signatures of registered voters, and whether there are sufficient valid signatures to certify the petitions (MCL 168.552[8]).

*Foster, Swift, Collins & Smith, P.C.* (by *Eric E. Doster*), for the plaintiffs.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Gary P. Gordon* and *Heather S. Meingast*, Assistant Attorneys General, for the Board of State Canvassers.

*Michael A. Cox*, Attorney General, *Robert S. Welliver*, Counsel of Record, and *D.J. Pascoe, Jane O. Wilensky*, and *Joel D. McGormley*, Assistant Attorneys General, for the Secretary of State.

*Sachs Waldman* (by *Mary Ellen Gurewitz*) for Mark Brewer.

Before: O'CONNELL, P.J., and WHITBECK, C.J., and OWENS, J.

PER CURIAM. Plaintiffs filed this complaint for mandamus seeking an order of this Court compelling the Board of State Canvassers to find sufficient and certify the petitions seeking to nominate Ralph Nader as an independent candidate for the office of President of the

United States and directing that the name of Ralph Nader be placed on the Michigan ballot for President of the United States in the November 2, 2004, election. The Secretary of State has moved for summary disposition, arguing that plaintiffs have failed to identify any way in which she failed to fulfill her duties. We agree and grant both requests for relief.

Plaintiffs in this matter consist of a person who signed, circulated, and filed petition sheets (Nick Deleeuw), and petition signers seeking to have Ralph Nader listed on the ballot as an independent candidate for President of the United States. There is no dispute that under the Election Law, MCL 168.1 *et seq.*, a petition to qualify as an independent candidate for President of the United States on the 2004 Michigan ballot must include the signatures of at least thirty thousand electors and be filed no later than 4:00 P.M. on July 15, 2004. On that date, a representative of Ralph Nader filed a qualifying petition that included an estimated 5,463 voter signatures. That same day, plaintiff Deleeuw filed an additional estimated 45,040 signatures in support of the petition. There is no dispute that the signatures Deleeuw filed were collected by members and officials of the Republican Party who obtained the petition forms from Mr. Nader's website. There is also no dispute that on July 13, 2004, Mr. Nader filed an affidavit of identity as described in MCL 168.558 indicating his desire to be nominated as an independent candidate for President of the United States.

The Secretary of State reviewed the submissions and determined that there were a sufficient number of facially valid signatures to accept the petition. On July 22, 2004, Michigan Democratic Party Chairman Mark Brewer filed a challenge to the petition under MCL 168.552, asserting, among other things, that Mr. Nad-

er's qualifying petition could not include the signatures filed by Deleeuw because under MCL 168.590 the candidate must file the petition, and alleging that a substantial number of the signatures had been obtained in violation of Michigan election law.

The Board of State Canvassers conducted a hearing on the challenge on August 23, 2004. Notably, no one appeared at the hearing on behalf of Nader or his campaign. After listening to extensive arguments from both sides, the board was unable to come to a decision on any of the four motions placed before it. Plaintiff filed this complaint for mandamus on August 25, 2004. This Court granted Mark Brewer's motion to intervene on August 26, 2004.

"To obtain a writ of mandamus, the plaintiff must show that: (1) the plaintiff has a clear legal right to the performance of the duty sought to be compelled, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial in nature, and (4) the plaintiff has no other adequate legal or equitable remedy." *White-Bey v Dep't of Corrections,* 239 Mich App 221, 223-224; 608 NW2d 833 (1909), citing *In re MCI,* 460 Mich 396, 443; 596 NW2d 164 (1999); see also *Bingo Coalition for Charity—Not Politics v Bd of State Canvassers,* 215 Mich App 405, 413; 546 NW2d 637 (1996).

The Board of State Canvassers comes within the definition of an "agency" in the Administrative Procedures Act. MCL 24.203(2). "An agency has no inherent power. Any authority it may have is vested by the Legislature, in statutes, or by the [C]onstitution." *Belanger & Sons, Inc v Dep't of State,* 176 Mich App 59, 62-63; 438 NW2d 885 (1989); *Pharris v Secretary of State,* 117 Mich App 202, 204; 323 NW2d 652 (1982). The Board of State Canvassers' authority and duties with regard to qualifying petitions are set forth at MCL

168.552(8), which provides that the board's sole duty with regard to qualifying petitions is to determine whether the signatures on the petitions are valid, including those of the people who circulate the petitions, whether they are the signatures of registered voters, and whether there are sufficient valid signatures to certify the petitions. See *Gillis v Bd of State Canvassers*, 453 Mich 881 (1996). There is nothing in the statute that would permit the board to look behind the signatures to determine the motives of the individual signatories or the motives or desires of the candidate. The Secretary of State found that there were sufficient valid signatures to warrant certification of the petition to place Nader on the November ballot as an independent candidate.

Under MCL 168.552(8), challenges to the sufficiency of the petition are limited to "questioning the registration or the genuineness of the signature of the circulator or of a person signing a . . . petition filed with the secretary of state . . . ." The board had no authority to consider any issues other than those identified in MCL 168.552(8). The challenge to the petition failed to establish that there were not at least thirty thousand valid signatures filed in support of Nader's candidacy, and, in fact, the board never disputed the genuineness of the signatures or the registration status of the people who signed the petitions. Rather, the challenge alleged various violations of election law, a subject that is not within the scope of the board's review. See MCL 168.31 (requiring the Secretary of State to report election fraud to the Attorney General or prosecutor) and MCL 168.943 (conferring on circuit courts jurisdiction over offenses committed under the act). Consequently, because the challenge to the petition failed to establish that there were not at least thirty thousand valid signatures filed in support, the board breached its clear

legal duty to certify the petition. See MCL 168.552(8), which allows the board to investigate only if the board "receives a sworn complaint, in writing, questioning the *registration of* or the *genuineness of* the signature of the circulator or of a person signing a [qualifying] petition . . . ." (Emphasis added.)

Intervenor Mark Brewer argues that only a candidate has standing to challenge the board's failure to certify a qualifying petition. He relies on MCL 168.552(12), which states:

> A person who has filed a nominating petition with the secretary of state and who feels aggrieved by a determination made by the board of state canvassers may have the determination reviewed by mandamus, certiorari, or other appropriate process in the supreme court.

Brewer contends that the only petition involved in this case was filed by Ralph Nader, because only a candidate can file a qualifying petition under MCL 168.590, and the provisions of MCL 168.522 are made applicable to qualifying petitions by MCL 168.590f. Although plaintiffs contend that the issue of standing was waived because it was not raised before the board, it could not have been raised at that time because the issue revolves around standing to seek mandamus relief in this Court. Moreover, had it been raised, the board would not have had authority to decide it.

None of the parties to this dispute is arguing that a qualifying petition may only be filed by the candidate in person; rather, Brewer contends that only the candidate or the authorized agent of a candidate can file a qualifying petition, citing MCL 168.590.[1] Plaintiffs con-

---

[1] A requirement that any candidate for public office file his petition in person would be unconstitutional as a severe burden on a qualified individual's right to seek public office, at least with regard to federal positions, which burden could not be justified by a compelling state

tend that because Nader ratified their actions by accepting the petitions, they were acting as his agents. 1 Restatement of Agency, 2d, § 82, p 210, defines "ratification" as follows:

> Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.

See also *Henritzy v Gen Electric Co*, 182 Mich App 1, 8; 451 NW2d 558 (1990); Black's Law Dictionary (6th ed). It was unrebutted at the hearing that, regardless of Nader's media protestations to the contrary, he had taken every official action necessary for accepting the additional signatures, and, following the hearing, his campaign committee filed the forms necessary to identify his vice-presidential running mate and electors on August 30, 2004. This action ratified the additional signatures filed on Nader's behalf. There is no question that Nader knew that the Republican Party was collecting petition signatures on his behalf; he could have appeared at the hearing, filed a complaint for injunctive relief in circuit court or a complaint with the prosecutor to stop this activity; however, he did not. Therefore, even if the statute is interpreted as including an agency requirement, it was met here. Since Deleeuw was, according to the plain meaning of the statute, "a person filing a . . . petition," MCL 168.590(3), he has standing.

Significantly, the Legislature has not seen fit to require the Secretary of State to obtain verification of the authority of persons filing nominating or qualifying petitions. To interpret the statutory scheme as requir-

interest. *Burdick v Takushi*, 504 US 428, 434; 112 S Ct 2059; 119 L Ed 2d 245 (1992), *Anderson v Celebrezze*, 460 US 780, 789; 103 S Ct 1564; 75 L Ed 2d 547 (1983), and *Socialist Workers Party v Secretary of State*, 412 Mich 571, 587; 317 NW2d 1 (1982).

ing that the person filing a petition be the agent of the candidate would require the Secretary of State to conduct an investigation into the authority of every person who filed such a petition, which the Legislature has not seen fit to do. Although the challenge to the petition argued that allowing third persons to file petitions "opens up unlimited opportunities for mischief and manipulation," all the examples cited involve an attempt to keep a candidate off the ballot. In this case, the object of the petition was to get Nader on the ballot, which vindicates the voting rights of those voters who would prefer to vote for Nader. The "expression of political preference . . . [is] the bedrock of self-governance." *Socialist Workers Party v Secretary of State*, 412 Mich 571, 588; 317 NW2d 1 (1982). There is a fundamental difference between actions taken to get a candidate's name on the ballot and actions taken to prevent it from appearing. Associating for the purpose of getting a candidate's name or a legislative proposal on the ballot is protected activity under the First Amendment; conspiring for the purpose of having it removed is not. *Meyer v Grant*, 486 US 414, 421-422; 108 S Ct 1886; 100 L Ed 2d 425 (1988). In addition, all the examples of "mischief" cited by the challengers to the petition would be forestalled where the candidate has the options of withdrawing himself from consideration as an independent candidate, filing a civil suit for injunctive relief, or filing a complaint for election fraud with the prosecutor or the Attorney General.

Intervenor Brewer cites *National Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608; 684 NW2d 800 (2004), for the proposition that the Legislature may not simply confer standing by statute, but that a party must establish that it has or will imminently suffer an injury in fact. *Id.* at 629. We agree that such an injury is necessary regardless of MCL 168.552(12), but find that

plaintiffs have standing solely based on the fact that they can demonstrate that they will suffer an imminent "injury in fact," i.e., a concrete and particularized invasion of a legally protected interest, if we do not intervene. Therefore, notwithstanding our finding that the statutory language supports plaintiffs' proposition, our finding of standing is, necessarily, independent of MCL 168.552 and based on plaintiffs' injury in fact. *Cleveland Cliffs, supra.*

Analyzing this case in light of *Cleveland Cliffs*, the first inquiry is whether plaintiffs have a legally recognized interest to invade. The myriad laws passed to protect the sanctity of petitions and the public measures that incorporate the petition into the decision-making process provide ample support for the proposition that petition signers possess a legally protected interest in having their signatures validated, invalidated, empowered, or disregarded according to established law—not the political whimsy of a rogue signature counter, clerk, or delivery man. Petitions are a vital means of gathering the collective assent of the people, and if the law will not protect a petition signer's interest in the proper use of the signature, then those opposed to the petition may quickly find themselves without an adversary.[2] We recognize that a court will not ordinarily allow the public to use the court's power to interfere with the executive branch's enforcement of laws because this disturbs our constitutionally framed separation of powers. *Cleveland Cliffs, supra* at 622. Normally, courts require citizens to resort to the election process to vent any frustration. *Id.* at 622-623. Election cases are special, however, because without the

---

[2] We also note that the Legislature specifically protects the interest of petition signers and circulators in initiative and referendum situations. MCL 168.479.

process of elections, citizens lack their ordinary recourse. For this reason we have found that ordinary citizens have standing to enforce the law in election cases. *Helmkamp v Livonia City Council*, 160 Mich App 442, 445; 408 NW2d 470 (1987). Moreover, we are not dealing with ordinary citizens here. Collectively, plaintiffs duly circulated, signed, and filed petitions that the board would now mute by its inaction. Under these circumstances, plaintiffs possessed a legally protected interest in having their valid signatures effectuate their petition to qualify the named political candidate as mandated by law.[3]

The next relevant inquiry is whether the board will imminently invade plaintiffs' interest in a concrete and particularized way. *Cleveland Cliffs, supra* at 629. The board's action, in conjunction with the deadlines involved in this case, poses the imminent threat of effectively extinguishing the petitions' power. While the statute requires plaintiffs to be aggrieved by a "determination"[4] of the board, MCL 168.552(12), it is enough for us that the action of the board threatens to obliterate the petitions in every practical way. Therefore, the board's action certainly qualifies as an imminent, concrete, and particularized invasion of plaintiffs' interest in having their valid signatures duly and legally counted. Once plaintiffs demonstrate an injury in fact, we must simply inquire whether the board caused the action and whether a favorable decision will likely redress the harm. *Cleveland Cliffs, supra* at 628-630, quoting *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726, 729; 629 NW2d 900 (2001), quoting *Lujan v Defenders*

---

[3] Certainly the interest in having one's signature on a petition carry the political import one intended rises to a level worthier of recognition than the recreational use of lands involved in *Cleveland Cliffs*.

[4] The board's inaction, through its deadlock, in our view constitutes an action, which is the equivalent of a determination.

*of Wildlife,* 504 US 555, 578; 112 S Ct 2130; 119 L Ed 2d 351 (1992); *Cleveland Cliffs, supra* at 639 (KELLY, J., concurring in result). The board's action would have improperly taken the validity from these signatures, and our order will restore it. Therefore, plaintiffs had standing to bring this action.

Finally, the Secretary of State has moved for summary disposition of the complaint as it applies to her for failure to state a claim on which relief could be granted. Plaintiffs have failed to allege any improper conduct on the part of the Secretary of State or that any clear legal duty was breached. Consequently, summary disposition is appropriate and is granted in the order issued concurrently with this opinion.

Accordingly, the requested relief is granted in the accompanying order of mandamus. We retain jurisdiction.