MARTIN v SECRETARY OF STATE

Docket No. 286015. Submitted July 29, 2008, at Lansing. Decided August 21, 2008, at 9:20 a.m. Reversed in part, 482 Mich 956.

Christopher P. Martin filed a nominating petition with the Bureau of Elections, Department of State, seeking to be placed on the ballot as a candidate for judge of the 23rd Judicial Circuit. Following a challenge based on an insufficient number of signatures on the petition, Martin attempted to submit additional signatures, which the bureau refused to accept because the filing deadline had passed. Martin and three persons who had signed his nominating petition brought an action in the Ingham Circuit Court against the Secretary of State, the director of the bureau, and the Board of State Canvassers, alleging that the Secretary of State had incorrectly advised Martin of the number of signatures required under MCL 168.544f and seeking injunctive relief. Twenty-third Judicial Circuit Judge Ronald M. Bergeron, who had challenged Martin's petition, and 23rd Judicial Circuit Judge William F. Myles, sought to intervene, arguing that they had an interest in the matter because of the possibility that an uncontested election could become a contested one. The court, William E. Collette, J., denied the motion to intervene and ordered the Secretary of State to extend the filing deadline and place Martin on the ballot if he filed sufficient additional signatures. Myles and Bergeron filed a claim of appeal and also filed a bypass application for leave to appeal in the Supreme Court. The Supreme Court denied the application, but ordered the Court of Appeals to issue a decision by a specific date. 481 Mich 943 (2008). The Court of Appeals treated the claim of appeal as an application for leave to appeal and granted it.

The Court of Appeals *held*:

A candidate for judicial office has not suffered an injury, and therefore is not an aggrieved party and does not have standing under MCR 7.203(A), solely because the candidate is required to run in a contested election. While Myles and Bergeron have an interest in the subject matter of the litigation, they have not satisfied the requirement for standing of a concrete and particularized injury.

Affirmed.

O'CONNELL, P.J., dissenting, disagreed that Myles and Bergeron lack standing. They were wrongfully denied the opportunity to intervene in this case in their capacities as private citizens and as candidates for public office. Thus, Myles and Bergeron are aggrieved parties and have standing to intervene. The trial court further erred by applying equity and ordering the Secretary of State to extend the filing deadline. Moreover, estoppel does not apply to the plaintiffs' claims. MCL 168.544f clearly indicates the signature requirements for a nominating petition for judicial office in the 23rd Judicial Circuit and Martin had a duty to follow those requirements. The trial court's order should be vacated.

*Dykema Gossett PLLC* (by *Gary P. Gordon, W. Alan Wilk,* and *Jason T. Hanselman*) for Christopher P. Martin and others.

*Kienbaum Opperwall Hardy & Pelton, P.L.C.* (by *Eric J. Pelton* and *Noel D. Massie*), for William F. Myles and Ronald M. Bergeron.

Before: O'CONNELL, P.J., and OWENS and BORRELLO, JJ.

BORRELLO, J. Appellants, 23rd Circuit Court Judges William F. Myles and Ronald M. Bergeron, appeal the trial court's June 10, 2008, injunction, by which the trial court ordered the Secretary of State to accept additional nominating petition signatures on behalf of plaintiff Christopher P. Martin until 4:00 p.m. on June 12, 2008, and to place Martin on the ballot as a candidate for judge of the 23rd Circuit Court if he filed sufficient valid signatures by that deadline. We affirm.

### I. FACTS AND PROCEDURAL HISTORY

The facts giving rise to this appeal are not in dispute. Martin sought to run for the office of judge of the 23rd Circuit Court. MCL 168.413 establishes the requirements for nominating petitions for candidates for circuit court judges:

> To obtain the printing of the name of a person as a candidate for nomination for the office of judge of the circuit court upon the official nonpartisan primary ballots, there shall be filed with the secretary of state nominating petitions containing the signatures, addresses, and dates of signing of a number of qualified and registered electors residing in the judicial circuit as determined under [MCL 168.544f] .... The secretary of state shall receive the nominating petitioners up to 4 p.m. of the fourteenth Tuesday preceding the primary.

MCL 168.544f imposes a graduated scale for the number of signatures required on the nominating petitions that is based on the population of the district. Before April 1, 2003, the 23rd Judicial Circuit was made up of Iosco and Oscoda counties and included one judge. 2002 PA 92 amended MCL 600.524 by restructuring the 23rd Judicial Circuit to include Alcona, Arenac, Iosco, and Oscoda counties and add one judge. With the additional counties, the 23rd Judicial Circuit has an estimated population of 65,745. Under MCL 168.544f, the minimum number of signatures required on a nominating petition for an individual seeking to be a judicial candidate for the 23rd Judicial Circuit is 200, and the maximum number of signatures on the nominating petition is 400.

MCL 600.550(1) requires the State Court Administrator's Office (SCAO) to notify the Bureau of Elections "with respect to each new circuit judgeship authorized pursuant to this subsection." This notice requirement is triggered when the county board of commissioners of each affected county approves the creation of the judgeship by resolution and files a copy of the resolution with SCAO. MCL 600.550(1). However, MCL 600.550a(4) eliminated the requirement of approval by the county board of commissioners for certain judicial circuits that were restructured, including the 23rd Judicial Circuit,

thus rendering virtually inoperable SCAO's notification obligation under MCL 600.550(1). The Bureau of Elections, which publishes signature requirements, was thus not notified of the change in the 23rd Judicial Circuit, and it provided erroneous information about the signature requirement for candidates seeking a judgeship in the 23rd Judicial Circuit, indicating that it was 100 to 200 signatures rather than the 200 to 400 signatures required by MCL 168.544f. The Secretary of State published this erroneous information, and it appeared on the Secretary of State's website.

According to affidavits submitted by Martin, he or individuals associated with his campaign made at least two calls to the Secretary of State in April 2008 to verify the number of signatures necessary to get his name on the ballot for the position of judge of the 23rd Judicial Circuit, and on both occasions the Secretary of State informed them that Martin needed to submit between 100 to 200 signatures and that submission of more than 200 signatures was a crime. In addition, a document entitled "Filing Requirements for Non-Incumbent Judicial Candidates" contained the same inaccurate information regarding the number of signatures required for the 23rd Judicial Circuit. In his affidavit, Christopher M. Thomas, Director of the Bureau of Elections, asserted that "[t]his publication has been posted on the Department of State's website and sent directly to candidates."[1] Relying on the Secretary of State's erroneous information regarding the number of signatures required, Martin filed 158 signatures with the Bureau of Elections on April 23, 2008. On May 1, 2008, after the April 29, 2008, deadline for gathering signatures and

[1] It is unclear from the record if the Bureau of Elections sent Martin this document, but Martin asserts in his affidavit that he viewed the document on the Bureau of Elections' website.

filing petitions had passed, Bergeron filed a challenge to Martin's eligibility to have his name placed on the ballot, arguing that Martin's petitions had an insufficient number of signatures and therefore failed to comply with MCL 168.544f. On May 5, 2008, Martin attempted to submit 208 additional signatures, but the Bureau of Elections refused to accept the signatures because the deadline had passed. On May 15, 2008, the Bureau of Elections sent Martin a letter informing him that he was ineligible to have his name listed as a candidate on the primary ballot because his petition contained less than 200 signatures and was therefore insufficient on its face.

Plaintiffs filed this action in the circuit court on May 30, 2008, against the Secretary of State, the Director of the Bureau of Elections, and the Board of State Canvassers, requesting a temporary restraining order, a preliminary injunction, and, after a final hearing, a permanent injunction enjoining the Secretary of State from excluding Martin from the ballot. Plaintiffs also sought orders of mandamus against the Board of State Canvassers and the Secretary of State and alleged violations of plaintiffs' First Amendment rights and the due process clauses of the United States and Michigan constitutions, negligent misrepresentation, promissory estoppel, and entrapment by estoppel. A hearing was set for June 10, 2008. On June 9, 2008, appellants filed an emergency motion to intervene, arguing that they had "an obvious interest in whether an otherwise uncontested election becomes a contested election, by virtue of the relief Martin requests in this lawsuit."

At the June 10, 2008, hearing, the trial court considered appellants' motion to intervene, as well as plaintiffs' complaint. Appellants asserted that they were entitled to intervene under MCR 2.209(A)(3) and con-

tended that their interests would not necessarily be protected by the existing defendants, noting that the Secretary of State had indicated that it would not appeal a ruling that was contrary to appellants' interests. Defendants did not object to appellants' attempt to intervene in the matter. However, plaintiffs asserted that appellants' motion to intervene was untimely. Plaintiffs also argued that appellants had failed to demonstrate that they would not be adequately represented by the existing defendants, observing that the Attorney General had undertaken an aggressive defense of the matter and had filed an extensive brief. The trial court denied the motion to intervene, stating that appellants did not have standing to intervene because the litigation involved whether the court "should issue a writ of mandamus against the Secretary of State. It is not directed at [appellants.]" In an order dated June 25, 2008,[2] the trial court stated: "Incumbents' Motion to Intervene is denied because the Incumbents have not satisfied the requirements set forth in MCR 2.209(A)(3) for the reasons discussed on the record." The trial court further ordered the Secretary of State to extend the deadline for filing nominating petition signatures until 4:00 p.m. on June 12, 2008, and if sufficient signatures were filed, to place Martin's name on the ballot. Thereafter, Martin acquired sufficient signatures, and the

---

[2] We note that the court did not enter the order denying the motion to intervene until June 25, 2008, after appellants filed the claim of appeal. While appellants have provided this Court with that order as a supplement to their claim of appeal, they did not apply for leave to appeal that order or move this Court to amend the appeal. However, given the nature of the case, the time constraints placed on this Court, and the lack of argument from appellees on this issue, we exercise our discretion to treat appellants' claim of appeal as an application for leave to appeal, and we grant it. See *In re Investigative Subpoena re Homicide of Lance C Morton*, 258 Mich App 507, 508 n 2; 671 NW2d 570 (2003).

Secretary of State placed his name on the November 4, 2008, ballot for the position of judge of the 23rd Circuit Court.

Appellants filed their claim of appeal on June 17, 2008, along with motions to expedite, to waive the requirements of MCR 7.209, for immediate consideration, for peremptory reversal, and for a stay. In a June 20, 2008, order, this Court granted immediate consideration and appellants' motion to waive the requirements of MCR 7.209, but denied peremptory reversal or a stay. In a June 27, 2008, order, this Court granted the motion to expedite and directed the parties to address whether appellants are aggrieved parties within the meaning of MCR 7.203(A). Shortly thereafter, appellants filed a bypass application for leave to appeal in the Michigan Supreme Court. In an order dated July 9, 2008, our Supreme Court denied the application, but ordered this Court to issue a decision in this case no later than August 21, 2008.

## II. ANALYSIS

We first address whether appellants meet the definition of "aggrieved party" under MCR 7.203(A). The concepts of standing and whether an individual is an aggrieved party are closely related. See *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 290-291; 715 NW2d 846 (2006). Whether a party has standing is a question of law, which we review de novo. *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726, 734; 629 NW2d 900 (2001). "In order to have appellate standing, the party filing an appeal must be 'aggrieved.' " *Manuel v Gill*, 481 Mich 637, 643; 753 NW2d 48 (2008); see *Federated Ins Co*, 475 Mich at 290-291; MCR 7.203(A).

This court "has jurisdiction of an appeal of right filed by an *aggrieved party* from" a final order or judgment of

the trial court. MCR 7.203(A) (emphasis added). In *Federated Ins Co*, the Supreme Court clarified the requirements for a party to be an aggrieved party under MCR 7.203(A):

> "To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency." *In re Estate of Trankla*, 321 Mich 478, 482; 32 NW2d 715 (1948), citing *In re Estate of Matt Miller*, 274 Mich 190, 194; 264 NW 338 (1936). An aggrieved party is not one who is merely disappointed over a certain result. Rather, to have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power. The only difference is a litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case. [*Federated Ins Co*, 475 Mich at 291-292.]

The Supreme Court's holding in *Federated Ins Co* regarding who is an aggrieved party under MCR 7.203(A) heightened the requirements to be an aggrieved party, thus rendering it more difficult for a party to invoke the jurisidiction of this Court. Before the Supreme Court decided *Federated Ins Co*, a litigant was an aggrieved party if the party's legal right was invaded by an action or the party's pecuniary interest was directly or adversely affected by a judgment or order. See *In re Critchell Estate*, 361 Mich 432, 448-449; 105 NW2d 417 (1960); *In re Freeman Estate*, 218 Mich App 151, 155; 553 NW2d 664 (1996). It was sufficient if a party had "an interest in the subject matter of the litigation." *In re Critchell Estate*, 361 Mich at 448; see also *In re Freeman Estate*, 218 Mich App at 155. After *Federated Ins Co*, to be "aggrieved," a party must have more than a mere interest in the subject matter of the proceedings below; the party "must have suffered a

concrete and particularized injury . . . ." *Federated Ins Co*, 475 Mich at 291. A "minute and generalized" injury is not concrete and particularized. *Rohde v Ann Arbor Pub Schools*, 479 Mich 336, 354; 737 NW2d 158 (2007).

Appellants argue that they have suffered a concrete and particularized injury because they must endure a contested judicial election with an opponent who has not met the statutory requirements to properly be on the ballot and this will require them to make significant financial expenditures. Clearly, appellants, as incumbent judges, have an interest in the subject matter of the litigation, because the results of such litigation would determine whether they run unopposed in the November 2008 election or face a challenger. However, we are unwilling to conclude as a matter of law that a candidate for elected office is an aggrieved party solely by virtue of being required to run for elected office in a contested election. In support of our conclusion in this regard, we note that we have previously recognized that "the definition of 'aggrieved party' varies according to the type of case at issue, and, consequently, the court must in each case examine the subject matter of the litigation." *Security Ins Co of Hartford v Daniels*, 70 Mich App 100, 105; 245 NW2d 418 (1976). The subject matter of the instant case concerns an attempt by appellants, as incumbent judges, to keep a potential challenger off the ballot. This Court has recognized that

> [t]here is a fundamental difference between actions taken to get a candidate's name on the ballot and actions taken to prevent it from appearing. Associating for the purpose of getting a candidate's name or a legislative proposal on the ballot is protected activity under the First Amendment; conspiring for the purpose of having it removed is not. [*Deleeuw v Bd of State Canvassers*, 263 Mich App 497, 504; 688 NW2d 847 (2004).]

While we certainly do not believe that appellants conspired to have Martin's name removed from the ballot, their attempt to bar Martin from appearing on the ballot is the subject matter of the litigation. We decline to hold as a matter of law that a candidate for elective office is an aggrieved party by virtue of facing a contested election for that office when the nature of the litigation involves the candidate's attempt to bar a potential challenger from appearing on the ballot. We acknowledge that our holding in this regard effectively denies appellants access to the courts. While we would not be inclined to close the courthouse doors in this manner to a party who was seeking to get a candidate's name on the ballot, we do not so zealously protect parties who seek to prevent a candidate's name from appearing on the ballot. In this case, appellants are understandably disappointed about the fact that Martin's appearance on the ballot will require them to engage in a considerably more difficult and more expensive contested election rather than run unopposed for the judicial seats they seek. However, a party who is merely disappointed over a result is not an aggrieved party. *Federated Ins Co*, 475 Mich at 291.

Even if we were inclined to conclude that appellants are aggrieved parties under MCR 7.203(A), however, appellants have not satisfied the requirement of a concrete and particularized injury established by the Supreme Court in *Federated Ins Co*, 475 Mich at 291. At most, appellants have established the possibility of being faced with uncertain and unspecified expenditures as a result of campaigning in a contested election. According to appellants, Martin's name on the ballot "inevitably will put [appellants] to significant expense." Even if this is true, such undefined significant expenses do not constitute a concrete and particularized injury under *Federated Ins Co* because appellants have not

specified, articulated or explained the nature of the significant expenses (whether such expenses would be necessary for television or radio advertisement, signs or brochures, or some other expenses) or the amount of those expenses. We conclude that any injury to appellants in this case is uncertain and unparticularized; therefore, appellants have failed to establish a concrete and particularized injury, as required by *Federated Ins Co*.

Appellants have not cited any caselaw from Michigan or another jurisdiction in which a court has held that being a candidate in a contested election for public office renders an individual an aggrieved party. In support of their argument that they will suffer an injury if they are forced to make financial expenditures[3] to engage in a contested election, appellants rely on two federal cases: *Daggett v Comm on Governmental Ethics & Election Practices*, 172 F3d 104, 108 (CA 1, 1999), and *Marshall v Meadows*, 921 F Supp 1490 (ED Va, 1996). We conclude that these cases are distinguishable from this case in that neither federal case decides whether a person is an aggrieved party under MCR 7.203(A) or a similar statute or court rule and neither case holds that an incumbent elected official suffers a concrete and particularized injury by virtue of having to make financial expenditures to campaign in a contested election. Thus, we are not persuaded by appellants' reliance on these cases.

Appellants also argue that as citizens they have standing to ensure that the elections laws of the state of Michigan are properly enforced and that they are aggrieved parties if they are denied the opportunity to

---

[3] We note that appellants have not provided any documentation to demonstrate that they have expended any funds on behalf of their reelection campaigns, nor is there any mandate that they do so.

ensure that such laws are enforced. In support of this contention, appellants rely primarily on this Court's decision in *Deleeuw*. In *Deleeuw*, Republican Party operatives, including plaintiff Deleeuw, were seeking to place Ralph Nader's name on the Michigan ballot for President of the United States in the November 2004 election. We ruled that the plaintiffs had standing in that action because they had circulated, signed, and filed the nominating petitions on behalf of Ralph Nader, thereby giving them a legally protected interest for this Court to enforce. In so ruling, we opined:

> Normally, courts require citizens to resort to the election process to vent any frustration. Election cases are special, however, because without the process of elections, citizens lack their ordinary recourse. For this reason we have found that ordinary citizens have standing to enforce the law in election cases. Moreover, we are not dealing with ordinary citizens here. Collectively, plaintiffs duly circulated, signed, and filed petitions that the board would now mute by its inaction. Under these circumstances, plaintiffs possessed a legally protected interest in having their valid signatures effectuate their petition to qualify the named political candidate as mandated by law. [*Deleeuw*, 263 Mich App at 505-506 (citations omitted).]

If there was any question, in *Deleeuw* we clarified that questions of standing in election cases must be considered using the standing principles outlined in *Nat'l Wildlife Federation v Cleveland Cliffs Iron Co*, 471 Mich 608; 684 NW2d 800 (2004). In *Nat'l Wildlife*, Justice MARKMAN, writing for the majority, stated:

> At a minimum, standing consists of three elements:

> "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical." ' Second, there must be a causal connection between the injury and the

conduct complained of—the injury has to be 'fairly . . .
traceable to the challenged action of the defendant, and
not . . . the result [of] the independent action of some third
party not before the court.' Third, it must be 'likely,' as
opposed to merely 'speculative,' that the injury will be
'redressed by a favorable decision.' " [*Id.* at 628-629 (cita-
tion omitted).]

As we have observed previously in this opinion, the
concepts of standing and aggrieved party are inter-
twined. For the same reasons that appellants did not
establish that they suffered a concrete and particular-
ized injury that rendered them aggrieved parties under
MCR 7.203(A), we also conclude that they have failed to
establish the first element in the standing analysis.
Appellants have not suffered a legally cognizable injury
by virtue of being forced to run in a contested judicial
election. Additionally, we note that there is a significant
factual distinction between this case and *Deleeuw*. In
this case, appellants are attempting to prevent a candi-
date from appearing on the ballot, whereas in *Deleeuw*
the plaintiffs were attempting to get an individual's
name on the ballot. As this Court sagely observed in
*Deleeuw*, this difference is critical: "There is a funda-
mental difference between actions taken to get a can-
didate's name on the ballot and actions taken to prevent
it from appearing." *Deleeuw*, 263 Mich App at 504. In
sum, *Deleeuw* stands for the proposition that the inter-
ests of the public are better served by having the names
of candidates placed on the ballot rather than by
removing them.

### III. CONCLUSION

We share and agree with the concerns raised by the
dissent that citizens possess the right to redress griev-
ances involving elections through our courts. We em-
phasize that nothing in this opinion should be con-

strued to limit citizens' access to our courts to ensure that the election laws of this state are enforced. Rather, our opinion must be narrowly construed and limited to the unique facts of this case. This narrow holding stands solely for the conclusion that pursuant to the dictates set forth by our Supreme Court in *Federated Ins Co* and *Nat'l Wildlife*, a candidate for judicial office has not suffered an injury and therefore is not an aggrieved party and does not have standing solely because the candidate is required to run in a contested judicial election. Because we conclude that appellants are not aggrieved parties under MCR 7.203(A) and have failed to articulate a legally cognizable right granting them standing in this matter, we need not address any additional arguments advanced by the parties.

Affirmed. No costs, a public question having been involved.

OWENS, J., concurred.

O'CONNELL, P.J. (*dissenting*). The majority concludes that appellants are not aggrieved parties and, therefore, lack standing as Michigan citizens to intervene in the underlying election dispute in this case. I respectfully disagree. I believe that appellants were wrongfully denied their opportunity to intervene in this case, both in their capacities as private citizens and as candidates for public office. By concluding otherwise, the majority has essentially determined that Michigan citizens do not automatically have standing to ensure that the election laws of this state are properly enforced. Further, although the majority did not address the issue, I also conclude that the trial court erred when it ordered the Secretary of State to extend the filing deadline to give plaintiff Christopher P. Martin the opportunity to file additional nominating petition signatures and to

allow his name to appear on the ballot. I would vacate the trial court's order and affirm the decision of the Secretary of State.[1]

First, I disagree with the trial court's conclusion that appellants were not aggrieved parties and, therefore, lacked standing to intervene in this case. In a confusing decision, the trial court concluded that appellants attempted to intervene because they would have to campaign in a contested election if Martin was placed on the ballot, but appellants were not aggrieved parties and their status as judicial candidates was insufficient to confer standing. The majority agrees. I do not. The trial court's conclusion that a person running for public office does not have an interest in the election or is not an aggrieved party in litigation designed to add or subtract names from the ballot is clearly erroneous. I can think of no greater aggravation as an incumbent candidate than running in a contested election and risking the loss of a job. Further, the contested or uncontested nature of an election affects the manner in which the candidate runs his campaign and affects the amount of time and money that a candidate must invest in order to run a successful campaign. If a campaign is contested, it is axiomatic that a candidate will need to spend more time and money on the election (preparing mailings and yard signs, making speeches, etc.), not only to make his candidacy more widely known, but also to highlight the differences between himself and his opponent and showcase the reasons why voters should

---

[1] I concur with the majority opinion that appellants filed an appeal as of right and that their claim should have been filed as an application for leave to file their appeal. However, because of the time constraints, and for the sake of judicial economy, we have exercised our discretion to treat appellants' claim of appeal as an application for leave to appeal and have granted it. See *In re Investigative Subpoena re Homicide of Lance C Morton*, 258 Mich App 507, 508 n 2; 671 NW2d 570 (2003).

elect him instead of his opponent. In my opinion, the proper application of the election laws at issue will affect appellants' job security and the nature of the campaigns they must run. Clearly, appellants are aggrieved parties.

In addition, the trial court incorrectly focused solely on appellants' status as judicial candidates and completely disregarded their status as voters in the district with a direct interest in the proper application of the election laws being upheld. Plaintiffs argue that appellants' status as voters is irrelevant because they have suffered no harm that the general public did not suffer. However, this Court has recognized that "[e]lection cases are special . . . because without the process of elections, citizens lack their ordinary recourse." *Deleeuw v Bd of State Canvassers*, 263 Mich App 497, 505–506; 688 NW2d 847 (2004). Because the improper implementation of election laws affects the process by which citizens normally exercise their collective voice to uphold the status quo or effectuate change, "ordinary citizens have standing to enforce the law in election cases."[2] *Id.* at 506. See also *Helmkamp v Livonia City Council*, 160 Mich App 442, 445; 408 NW2d 470 (1987) (holding that the plaintiffs in an election case "were not required to show a substantial injury distinct from that suffered by the public in general"). "[T]he right to vote is an implicit ' "fundamental political right" ' that is ' "preservative of all rights." ' " *In re Request for Advisory Opinion Regarding Constitutionality of 2005 PA 71*, 479 Mich 1, 16; 740 NW2d 444 (2007) (citation omitted). Further, the Legislature has the power and responsibility to "preserve the purity of elections" and "guard against abuses of the elective franchise . . . ."

---

[2] It is undisputed that appellants are not only candidates for election to the 23rd Circuit Court, but are also voters and ordinary citizens.

Const 1963, art 2, § 4. Given that this case concerns a trial court's application of equity to enter an injunction that permits an end run around election laws, appellants, in their capacity as ordinary citizens and voters, have suffered an injury and have standing to bring their claim to remedy this injury. *Helmkamp, supra* at 445. Having suffered an injury as a result of the trial court's actions, appellants are aggrieved parties.[3] *Manuel v Gill*, 481 Mich 637, 643-644; 753 NW2d 48 (2008).

The majority opinion, knowingly or unknowingly, creates two classes of citizens who may bring lawsuits to enforce Michigan's election laws. The first consists of those who want to bring a lawsuit to enforce Michigan's election laws in order to place a candidate's name on the ballot. The second consists of those who want to bring a lawsuit to enforce Michigan's election laws in order to deny a candidate a position on the ballot. Both classes of citizens have the same goal, i.e., to see that Michigan's election laws are properly administered. Remarkably, the majority opinion grants standing to one class and denies standing to the other. The majority claims that this Court's opinion in *Deleeuw*, supports its position, but the distinction that the majority makes in this case is not found in *Deleeuw*. Although *Deleeuw* addresses the issue of standing, it does not do so in a context similar to that found in this case. *Deleeuw, supra* at 502-507. Rather, the *Deleeuw* Court determined that a party who was not formally affiliated with an election campaign, yet was collecting signatures to get a candi-

---

[3] I note that MCR 7.203(B), which provides for jurisdiction for appeal by leave, does not include the "aggrieved party" language found in MCR 7.203(A). Thus, under a strict interpretation of the court rule, it would appear that status as an aggrieved party is not required for an appeal by leave. However, because our Supreme Court has ruled that appellate standing requires one to be aggrieved, *Manuel, supra* at 643-644, we must address this issue.

date's name on the ballot, had standing pursuant to MCL 168.590(3) to seek a mandamus action asking this Court to compel the Board of State Canvassers to certify the petition to place the candidate on the ballot. *Id.* at 503.

Granted, the *Deleeuw* Court noted that "[a]ssociating for the purpose of getting a candidate's name or a legislative proposal on the ballot is protected activity under the First Amendment; conspiring for the purpose of having it removed is not." *Id.* at 504. However, this case involves neither allegations of associating to place a candidate's name on the ballot nor conspiring to take it off. Rather, this case commenced because plaintiffs wanted to place Martin's name on the ballot for election to the 23rd Circuit Court, and appellants sought to intervene to ensure that election laws were properly followed. Therefore, I do not believe that *Deleeuw* supports the majority's conclusion that a citizen's standing in an election case varies depending on whether his substantive argument in support of the proper application of an election law would result in a candidate being placed on or taken off the ballot. Conversely, I conclude that all parties to this litigation have standing to ensure that the elections laws of the state of Michigan are properly enforced. To rule otherwise would discriminate against an entire class of citizens attempting to enforce our election laws.

Because the trial court determined that appellants were not aggrieved parties and did not permit them to intervene in this case, it did not consider any substantive arguments by appellants questioning the merits and propriety of its action when it decided that equity dictated permitting Martin to submit additional nominating signatures in order to be placed on the ballot as a candidate. However, because appellants should have

been permitted to intervene, the trial court erred when
it failed to give them a voice in this proceeding. For this
reason, the trial court should have permitted appellants
to intervene and should have considered appellants'
arguments before ruling on substantive issues regard-
ing whether to give Martin a chance to appear on the
ballot.

Notably, the majority does not address whether the
trial court erred when it determined that equity dic-
tated giving Martin the chance to appear on the ballot.
Presumably, the majority determined that its conclu-
sion that appellants lacked standing meant that it did
not need to address the trial court's substantive ruling.
However, because I have concluded that appellants have
standing and should have been permitted to intervene
in this case, and because the majority's affirmation of
the trial court's decision to the contrary means that a
situation will not occur in which the trial court could
revisit its decision to give Martin an opportunity to
appear on the ballot, I believe that it is necessary to
address appellants' argument that the trial court's
ultimate decision in this case, a decision in which
appellants were improperly denied a voice, was errone-
ous.

MCL 168.544f provides a chart detailing the number
of signatures required depending on the population of
the district in the last federal census and whether the
petition is partisan, nonpartisan, or qualifying. The
23rd Judicial District is made up of Alcona, Arenac,
Iosco, and Oscoda counties. Their respective popula-
tions in the 2000 census were 11,719, 17,269, 27,339,
and 9,418 individuals, resulting in a total population of
65,745. For a population between 50,000 and 74,999,
200 to 400 signatures are required for a nonpartisan

petition. MCL 168.544f. Because Martin submitted his petition with only 158 signatures, it was insufficient to place him on the ballot.

Plaintiffs argue that Martin was placed in a Catch-22 because he had received an instruction from the Secretary of State indicating that he should file his petition with 100 to 200 signatures and was required to follow that instruction pursuant to MCL 168.931(1)(h). Thus, he either had to ignore the instruction and be subject to misdemeanor prosecution or ignore MCL 168.544f and risk not being placed on the ballot. I disagree with plaintiffs' claim of forced duality. Even under the erroneous instruction, Martin was permitted to submit a maximum of 200 signatures. Had he done so, he would have met the minimum number of signatures necessary under the proper calculation. Thus, he could have complied with both the instruction and the proper statutory calculation.

However, moving beyond the simple math, MCL 168.931(1)(h) required Martin to "not wilfully-... disobey a lawful instruction or order of the secretary of state . . . ." Because the instruction requiring the submission of 100 to 200 signatures was contrary to the clear language of MCL 168.544f, it was not a lawful instruction, and Martin was not required to follow it. Had Martin taken the time to calculate the correct number of signatures required under MCL 168.544f, he would have been able to conclude that the instruction from the Secretary of State was erroneous and, therefore, need not be followed. If Martin had truly felt forced under these circumstances,[4] he should have called the discrepancy to the attention of the Secretary of State and filed the number of signatures he thought

---

[4] I say "if" because plaintiffs concede in their brief that Martin was unaware of the higher signature requirement in MCL 168.544f at the

appropriate. Contrary to plaintiffs' assertions, this would not have been unlawful behavior. Under MCL 168.548, it is unlawful to "wilfully and intentionally procure more signatures upon nominating petitions than the maximum number prescribed in this act." Had Martin explained that his calculation required the submission of 200 to 400 signatures under MCL 168.544f, then his submission would not have been unlawful under MCL 168.548 because it would not have been a willful and intentional submission of signatures over the maximum amount, but a willful and intentional attempt to comply with the statutory requirements.

Plaintiffs argue that Martin "relied on the instructions and verbal confirmations and presumed that they were correct." This argument reads as an estoppel argument, and I will treat it as such. I do not believe that estoppel is available, because caselaw only refers to estoppel against a *local unit of* government, see *Parker v West Bloomfield Twp*, 60 Mich App 583, 591; 231 NW2d 424 (1975), and defendants are officers of the state of Michigan. However, even assuming that estoppel could be applied in this situation, Martin must show not only good-faith reliance on the defendants' conduct, but also "lack of actual knowledge *or lack of the means of obtaining actual knowledge of the facts in question . . . .*" *Id.* at 592 (emphasis added). Martin had access to the statutes and census information and could have properly calculated the number of signatures needed to appear on the ballot. Therefore, estoppel is not appropriate.

Although I sympathize with Martin, I must conclude that the trial court erred in applying equity in this

time of his filing. Thus, the Catch-22 is merely a theoretical argument constructed after the fact, rather than an actual explanation for Martin's behavior.

situation. Equity only applies in the absence of a specific statutory mandate. See *Stokes v Millen Roofing Co*, 466 Mich 660, 672; 649 NW2d 371 (2002). " '[I]t is not [a court's] place to create an equitable remedy for a hardship created by an unambiguous, validly enacted, legislative decree.' " *Id.*, quoting *Stokes v Millen Roofing Co*, 245 Mich App 44, 58; 627 NW2d 16 (2001). This should be particularly true of election law. If this Court were to erode the statutory requirements of election law through the use of equity, we would create ambiguity and inconsistency in what needs to be a uniform and stable area of law. Once one exception is created, the very foundation of our form of government can be questioned and our citizens may lose faith. MCL 168.544f clearly indicated the signature requirements for Martin's judicial nomination petition, and Martin had a duty to follow them.[5] Because he did not submit the required number of signatures by the statutory deadline, he should not have been given an extra opportunity to be placed on the ballot. Holding otherwise invites the destruction of our citizens' faith in our electoral process.

I would vacate the trial court's order and affirm the decision of the Secretary of State.

---

[5] At oral argument, claims were made that the statute is difficult to follow. Even if that is the case, difficulty in understanding a statute does not give anyone the right to not follow it. If it did, for example, no one would ever have to pay taxes.