*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VICTORIA BURTON-HARRIS,

Plaintiff,

v

WAYNE COUNTY CLERK, and WAYNE COUNTY ELECTION COMMISSION,

Defendants-Appellees,

and

KYM WORTHY,

Intervenor-Defendant-Appellee,

and

ROBERT DAVIS,

Appellant.

FOR PUBLICATION
May 7, 2021
9:00 a.m.

No. 353999
Wayne Circuit Court
LC No. 20-007116-AW

Before: K.F. KELLY, P.J., and SERVITTO and LETICA, JJ.

PER CURIAM.

Robert Davis appeals as of right an order denying his motion to intervene and plaintiff's emergency motion for a temporary restraining order, mandamus relief, and declaratory relief. We affirm.

## I. BACKGROUND

This case involves events that occurred before the August 2020 primary election and concerns the duties owed by defendants Wayne County Clerk (the Clerk) and Wayne County

-1-

Election Commission (the Election Commission) (collectively, Wayne County defendants) with respect to MCL 168.558(4). On March 18, 2020, intervenor-defendant, Kym Worthy, filed an affidavit of identity (AOI) regarding her candidacy for the office of Wayne County Prosecutor in the 2020 election. The form affidavit included the following statement before her signature:

> I swear, or affirm, that the facts I have provided and the facts contained in the statement set forth below are true.

> *At this date, all statements, reports, late filing fees, and fines due from me or any Candidate Committee organized to support my election to the office under the Michigan Campaign Finance Act, PA 388 of 1976, have been filed or paid.*

> I acknowledge that making a false statement in this affidavit is perjury – a felony punishable by a fine up to $1,000.00 or imprisonment for up to 5 years, or both and may result in disqualification from the ballot (MCL 168.558, 933, and 936).

Plaintiff, also a candidate for Wayne County Prosecutor, submitted a letter to Wayne County defendants on June 2, 2020, to challenge Worthy's candidacy. Plaintiff explained that when Worthy was last elected in 2016, she was required to file a postelection statement under MCL 168.848 before assuming office. According to plaintiff, Worthy never filed the required statement. Consequently, the affirmation in Worthy's AOI was false, and Wayne County defendants had a duty to not certify Worthy for inclusion on the August 2020 primary ballot.

In response to plaintiff's challenge, the Clerk indicated that a facial review of Worthy's AOI "determined that all sections deemed mandatory by the Michigan Campaign Finance Act have been complied with and the requirements of MCL 168.558(2) have been met." The Clerk advised plaintiff that it did not have the power to investigate "the truth or falsity of a candidate's affirmation in the Campaign Finance Compliance Statement and Attestation section of the Affidavit of Identity." On June 5, 2020, the Clerk certified a list of candidates that included Worthy as a candidate for Wayne County Prosecutor, and the Election Commission approved printing of the August 2020 primary ballots.

Plaintiff immediately initiated this action by filing a verified complaint and emergency motion in an attempt to preclude Worthy's name from appearing on the ballots, and a show-cause hearing was scheduled for June 15, 2020. Davis filed an emergency motion to intervene on June 11, 2020, which the trial court addressed at the beginning of the June 15, 2020 hearing. Although Davis's proposed complaint substantially mirrored the mandamus and declaratory judgment counts in plaintiff's complaint, Davis urged the court to allow his intervention because he was concerned that plaintiff would not appeal an adverse ruling. Davis asserted that, as a registered voter in Wayne County, he had a right to pursue proper enforcement of election laws. The trial court denied Davis's motion to intervene and plaintiff's emergency motion. This appeal followed.

## II. MOOTNESS

Considering the timing of this appeal, Davis preemptively addressed the mootness doctrine, arguing that the issues involved in this case are either not moot because an alternative remedy

could be fashioned or, if moot, should still be addressed because the issues are publicly significant and likely to recur but evade judicial review.[1]  "[T]he question of mootness is a threshold issue that a court must address before it reaches the substantive issues of a case."  *Can IV Packard Square, LLC v Packard Square, LLC*, 328 Mich App 656, 661; 939 NW2d 454 (2019), quoting *In re Tchakarova*, 328 Mich App 172, 178; 936 NW2d 863 (2019) (quotation marks omitted).  Whether an issue is moot is a question of law reviewed de novo.  *Can IV Packard Square*, 328 Mich App at 661.

An issue is moot if it involves an abstract question of law without foundation in existing facts or rights or is presented under circumstances "in which a judgment cannot have any practical legal effect upon a then existing controversy."  *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) (quotation marks and citation omitted).  Although this Court will not generally address such issues, *Can IV Packard Square*, 328 Mich App at 661, "a moot issue will be reviewed if it is publicly significant, likely to recur, and yet likely to evade judicial review," *In re Indiana Mich Power Co*, 297 Mich App 332, 340; 824 NW2d 246 (2012).

Since Davis filed this appeal, the August 2020 primary election and November 2020 general election have taken place with Worthy's name appearing on the ballots.[2]  Thus, even if we found merit in the issues presented for review, we could not grant relief that would exclude Worthy as a candidate in the 2020 elections.  The issues before the Court are therefore moot, *TM*, 501 Mich at 317, but we agree that they should still be considered because the strict time constraints involved in elections create a reasonable expectation that the issues involved in this appeal could recur yet escape judicial review, *In re Indiana Mich Power Co*, 297 Mich App at 340.[3]

## III. INTERVENTION

---

[1] This Court denied Davis's motion to expedite this appeal under MCR 7.213(C)(4).  *Burton-Harris v Wayne Co Clerk*, unpublished order of the Court of Appeals, entered July 1, 2020 (Docket No. 353999).  The Supreme Court also denied Davis's emergency interlocutory application for leave to appeal this Court's July 1, 2020 order.  *Burton-Harris v Wayne Co Clerk*, 505 Mich 1141 (2020).

[2] See Wayne County, Official Results Summary Reports for Primary and General Elections <https://www.waynecounty.com/elected/clerk/election-results.aspx> (accessed March 16, 2021).  This Court may take judicial notice of a public record.  *Gleason v Kincaid*, 323 Mich App 308, 314 n 1; 917 NW2d 685 (2018).

[3] This exception is commonly applied in cases involving election-related issues because "the strict time constraints of the election process necessitate that, in all likelihood, such challenges often will not be completed before a given election occurs, rendering the discussion . . . moot before appellate review."  *Gleason*, 323 Mich App at 316.  See also *Christenson v Secretary of State*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 354037); slip op at 3-4 (regarding address on nominating petition); *Nykoriak v Napoleon*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 354410); slip op at 9 n 4 (regarding defective AOI); *Barrow v Detroit Election Comm*, 305 Mich App 649, 659-660; 854 NW2d 489 (2014) (regarding requirements for write-in candidacy).

Next, Davis challenges the trial court's denial of his motion to intervene. A trial court's ruling regarding a motion to intervene is reviewed for an abuse of discretion. *Kuhlgert v Mich State Univ*, 328 Mich App 357, 377; 937 NW2d 716 (2019). "An abuse of discretion occurs when the decision is outside the range of principled outcomes." *Id*. (quotation marks and citation omitted). A trial court's application of laches is reviewed de novo. *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013).

MCR 2.209 governs intervention. *Kuhlgert*, 328 Mich App at 378. Davis moved to intervene by right under MCR 2.209(A)(3). Under that subrule, intervention is allowed on timely application

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties. [MCR 2.209(A)(3).]

"[T]he rule should be liberally construed to allow intervention when the applicant's interest otherwise may be inadequately represented." *Auto-Owners Ins Co v Keizer-Morris, Inc*, 284 Mich App 610, 612; 773 NW2d 267 (2009) (quotation marks and citation omitted; alteration in original). Davis also sought permissive intervention under MCR 2.209(B)(2) which allows intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." MCR 2.209(B)(2). "[A] court deciding a request for permissive intervention must 'consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.' " *Kuhlgert*, 328 Mich App at 378-379, quoting *Hill v LF Transp, Inc*, 277 Mich App 500, 508; 746 NW2d 118 (2008). Both intervention rules "condition intervention on timely application." *Kuhlgert*, 328 Mich App at 379.

The trial court denied Davis's motion because his interest in the case was adequately represented by plaintiff. The court reasoned that plaintiff's interest in the matter was even more compelling than Davis's interest because plaintiff was not merely a qualified elector, but also a candidate for the same office pursued by Worthy. And although the court agreed that the claims presented by plaintiff and Davis involved common questions of law and fact, it opined that laches precluded Davis's intervention because "any delay in rendering and resolving this particular matter would, in fact, work a hardship upon, not only the clerks, but also upon the voters of Wayne County."

Davis maintains on appeal that his interest in proper enforcement of election laws was not adequately represented by plaintiff because he anticipated that plaintiff would not pursue appellate review of an adverse ruling. Davis compares the circumstances at hand to *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286; 715 NW2d 846 (2006), wherein the Court determined that the Attorney General could not, by moving to intervene before the Supreme Court, appeal a decision of this Court when the original litigants did not file a timely appeal. The Supreme Court recently clarified that its decision in *Federated Ins Co* was premised on the absence of a "justiciable controversy because neither of the losing parties below filed a timely appeal and because the Attorney General was not an aggrieved party." *League of Women Voters of Mich v*

*Secretary of State*, ___ Mich ___, ___; ___ NW2d ___ (2020) (Docket Nos. 160907 and 160908); slip op at 7. The Court continued:

> *Federated* never held that there would be no justiciable controversy if the losing parties below failed to file a timely appeal but a party with appellate standing filed a timely motion to intervene (i.e., before the deadline to file an application for leave to appeal). Therefore, *Federated* left open the possibility that there may be a justiciable controversy in such circumstances. This rule makes sense—we see no reason why an entity that otherwise is aggrieved and therefore has appellate standing should be prohibited from intervening before a lower-court judgment becomes final, i.e., before the deadline to file an application for leave to appeal. [*Id*. at ___; slip op at 7-8.]

Appellate standing exists when a litigant "suffered a concrete and particularized injury . . . arising from either the actions of the trial court or the appellate court judgment . . . ." *Federated Ins Co*, 475 Mich at 291-292. While a litigant must generally have an injury, right, or interest that distinguishes the litigant from the citizenry at large, *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010), "the bar for standing is lower when a case concerns election law," *League of Women Voters*, ___ Mich at ___; slip op at 18. As previously summarized by this Court:

> Michigan jurisprudence recognizes the special nature of election cases and the standing of ordinary citizens to enforce the law in election cases. *Deleeuw v Bd of State Canvassers*, 263 Mich App 497, 505-506; 688 NW2d 847 (2004). See also *Helmkamp v Livonia City Council*, 160 Mich App 442, 445; 408 NW2d 470 (1987) ("[I]n the absence of a statute to the contrary, . . . a private person . . . may enforce by mandamus a public right or duty relating to elections without showing a special interest distinct from the interest of the public." [Quotation marks omitted.]). The general interest of ordinary citizens to enforce the law in election cases is sufficient to confer standing to seek mandamus relief. See *Citizens Protecting Michigan's Constitution* [*v Secretary of State*, 280 Mich App 273, 282; 761 NW2d 210 (2008), aff'd in part 482 Mich 960 (2008)] (permitting a ballot question committee to challenge a petition). [*Protect MI Constitution v Secretary of State*, 297 Mich App 553, 566-567; 824 NW2d 299 (2012), rev'd on other grounds 492 Mich 860 (2012) (first and second alterations in original).]

Thus, considering the subject matter of this case, it appears that Davis would have appellate standing.

When the trial court denied Davis's motion, the appellate concerns raised by Davis were still speculative because it was not yet apparent whether the court would deny plaintiff's requested relief or whether plaintiff would file an appeal in that event. Of course, the first of these questions was resolved moments later at the same hearing, but it remained unclear whether plaintiff would appeal the trial court's decision. Nonetheless, MCR 2.209(A)(3) is to be liberally construed in favor of intervention when "the applicant's interest otherwise *may* be inadequately represented." *Auto-Owners Ins Co*, 284 Mich App at 612 (quotation marks and citation omitted; emphasis

added). In other words, "inadequacy of representation need not be definitely established." *Vestevich v West Bloomfield Twp*, 245 Mich App 759, 762; 630 NW2d 646 (2001).

But assuming, without deciding, that the perceived adequacy of plaintiff's representation was not an appropriate basis for denying Davis's motion to intervene under MCR 2.209(A)(3), that was not the only reason for the trial court's ruling. As noted earlier, the court also applied laches to bar Davis's intervention as untimely. "MCR 2.209(A)(3) and (B) both condition intervention on timely application." *Kuhlgert*, 328 Mich App at 379. Laches is an equitable doctrine that bars a claim when "there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party." *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 252; 704 NW2d 117 (2005), quoting *Pub Health Dep't v Rivergate Manor*, 452 Mich 495, 507; 550 NW2d 515 (1996) (quotation marks omitted). Because the mere passage of time is an insufficient basis for invoking laches, the court's inquiry should focus on the prejudice caused by the delay. *Knight*, 300 Mich App at 114-115.

Plaintiff initiated this action on June 5, 2020, and Davis filed his motion to intervene six days later on June 11, 2020. While such a short period would be considered negligible in most cases, the narrow deadlines at issue in election matters are significant. Ballot printing began on June 6, 2020, and the Election Commission had to deliver absent voter ballots to the Clerk by June 18, 2020, for distribution to local clerks by June 20, 2020, in anticipation of the August 4, 2020 primary election. MCL 168.713; MCL 168.714. Davis's motion to intervene was heard on June 15, 2020, the same day plaintiff's emergency motion was scheduled for oral argument. If Davis had been allowed to intervene, the trial court would have needed to either adjourn plaintiff's emergency motion to permit Davis time to brief the issues or decide the motion without affording Davis an opportunity to address the merits of the issues. Considering the tight schedule mandated by the issues before the court, the court's denial of Davis's motion to intervene as untimely was not outside the range of principled outcomes.

## IV. MANDAMUS

Davis also challenges the trial court's denial of mandamus. "A trial court's decision whether to issue a writ of mandamus is reviewed for an abuse of discretion, but any underlying issue of statutory interpretation is a question of law, which is reviewed de novo on appeal." *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 133; 715 NW2d 398 (2006) (citations omitted). "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Barrow v Detroit Election Comm*, 305 Mich App 649, 662; 854 NW2d 489 (2014), quoting *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007) (quotation marks omitted; alteration in original). Whether the defendant has a clear legal duty to perform an act is also a question of law reviewed de novo. *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 518; 866 NW2d 817 (2014).

Mandamus is an extraordinary remedy used to enforce duties required of governmental actors by law. *Stand Up for Democracy v Secretary of State*, 492 Mich 588, 618; 822 NW2d 159 (2012); *Mercer v Lansing*, 274 Mich App 329, 333; 733 NW2d 89 (2007). The plaintiff seeking a writ of mandamus has the burden of establishing four requirements:

(1) the party seeking the writ has a clear legal right to the performance of the duty sought to be compelled, (2) the defendant has a clear legal duty to perform the act requested, (3) the act is ministerial, that is, it does not involve discretion or judgement, and (4) no other legal or equitable remedy exists that might achieve the same result. [*Southfield Ed Ass'n v Bd of Ed of Southfield Pub Sch*, 320 Mich App 353, 378; 909 NW2d 1 (2017) (quotation marks and citation omitted).]

The trial court denied mandamus relief, finding the second and third requirements lacking. "A clear legal duty, like a clear legal right, is one that 'is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided.' " *Hayes v Parole Bd*, 312 Mich App 774, 782; 886 NW2d 725 (2015), quoting *Rental Props Owners Ass'n*, 308 Mich App at 518-519. "A ministerial act is one in which the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Berry v Garrett*, 316 Mich App 37, 42; 890 NW2d 882 (2016), quoting *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 58 n 11; 832 NW2d 728 (2013) (quotation marks omitted).

Davis argues that Wayne County defendants had a clear legal duty to exclude Worthy from the primary election ballot. In support of his position, Davis relies on the interplay between MCL 168.558 and MCL 168.848. MCL 168.848 provides:

(1) Each elected candidate subject to the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282, and whose candidate committee received or expended more than $1,000.00 during the election cycle shall file a postelection statement with the filing official designated to receive the elected candidate's candidate committee campaign statements under section 36 of the Michigan campaign finance act, 1976 PA 388, MCL 169.236. All of the following apply to a postelection statement required by this section:

(a) The postelection statement must be on a form prescribed by the secretary of state.

(b) The elected candidate shall file the postelection statement before the elected candidate assumes office.

(c) The postelection statement shall include an attestation signed by the elected candidate that, as of the date of the postelection statement, all statements, reports, late filing fees, and fines required of the candidate or a candidate committee organized to support the candidate's election under the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282, have been filed or paid.

(d) The postelection statement shall include an attestation signed by the elected candidate acknowledging that making a false statement in a postelection statement is punishable by a fine of not more than $1,000.00 or imprisonment for not more than 5 years, or both.

(2) Failure to file a postelection statement as required by subsection (1) is a misdemeanor punishable by a fine of not more than $500.00 or imprisonment for not more than 93 days, or both.

MCL 168.558 governs the filing of certain documents by a candidate for elected office, including AOIs. *Nykoriak v Napoleon*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 354410); slip op at 3. Subsection (4) provides:

An affidavit of identity must include a statement that as of the date of the affidavit, all statements, reports, late filing fees, and fines required of the candidate or any candidate committee organized to support the candidate's election under the Michigan campaign finance act, 1976 PA 388, MCL 169.201 to 169.282, have been filed or paid; and a statement that the candidate acknowledges that making a false statement in the affidavit is perjury, punishable by a fine up to $1,000.00 or imprisonment for up to 5 years, or both. . . . *An officer shall not certify to the board of election commissioners* the name of a candidate who fails to comply with this section, or *the name of a candidate who executes an affidavit of identity that contains a false statement with regard to any information or statement required under this section*. [MCL 168.558(4) (emphasis added).]

Additionally, under MCL 168.567, "[t]he boards of election commissioners shall correct such errors as may be found in said ballots, and a copy of such corrected ballots shall be sent to the secretary of state by the county clerk."

On March 18, 2020, Worthy signed and filed a form AOI that included an affirmation consistent with the requirement in the first sentence of MCL 168.558(4). Plaintiff supported her complaint in this case with an affidavit stating that the public database containing campaign finance statements demonstrated that Worthy did not file the required postelection statement before assuming office in 2017. Plaintiff also produced an e-mail chain in which Davis requested Worthy's postelection statement and was advised by the Clerk's office that it did not have a postelection statement from Worthy on file. Davis argues that because Worthy's AOI contained a false statement indicating that she filed all necessary statements, MCL 168.558(4) required that Wayne County defendants not include Worthy as a candidate on the 2020 ballot, and the trial court should have ordered Wayne County defendants to remove Worthy's name from the ballot.

This Court has previously examined the duties imposed by MCL 168.558. The plaintiff in *Berry* sought a writ of mandamus against the county clerk and county election commission compelling them to exclude two candidates from a primary election ballot because the candidates' AOIs did not include a precinct number as required by former MCL 168.558(2). *Berry*, 316 Mich App at 40. This Court reversed the trial court's denial of mandamus, agreeing with the plaintiff that MCL 168.558(4) imposed a clear legal duty not to certify the name of a candidate who failed to comply with statutory requirements. *Id*. at 44. Moreover, having failed to perform that duty when they certified the two challenged candidates for inclusion on the ballot, the county defendants had "a clear legal duty to 'correct' such errors as may be found in the resulting, improper ballots." *Id*., citing MCL 168.567. This Court further explained:

[T]he action that plaintiff now seeks to compel is decidedly "ministerial" in nature. The duty to correct the ballots under § 567 is set forth "with such precision and certainty as to leave nothing to the exercise of discretion or judgment." See *Hillsdale*, 494 Mich at 58 n 11. Because the affidavits of identity . . . were defective on their face, defendants' assertion that they had no authority to review the affidavits is misplaced. Rather, by doing nothing more than the ministerial task of completing a facial review of the affidavits, defendants would undertake to perform their clear legal duty under § 558(4) to "not certify to the board of election commissioners the name of a candidate who [had] fail[ed] to comply" with § 558(2). [*Berry*, 316 Mich App at 44-45 (first alteration added).]

This Court addressed MCL 168.558(4) again in *Bsharah v Wayne Co Clerk*, unpublished per curiam opinion of the Court of Appeals, issued June 6, 2018 (Docket No. 344081).[4] Addressing a remarkably similar claim of error, this Court determined that a county clerk did not have a clear legal duty to look beyond the face of an AOI to determine the truthfulness of a candidate's statements. *Id*. at 4-6. Recognizing the clear parallels between *Bsharah* and this case, the trial court relied on *Bsharah* to deny plaintiff's request for a writ of mandamus.

We do not question the soundness of the *Bsharah* Court's analysis at the time that case was decided, but the key statute at issue, MCL 168.558(4), was subsequently amended by 2018 PA 650. At the time *Bsharah* was decided, MCL 168.558(4) required an AOI to include a statement regarding the candidate's compliance with necessary filings and acknowledgment of the consequences for making a false statement. MCL 168.558(4), as amended by 2014 PA 94. The last sentence of former MCL 168.558(4) said, "An officer shall not certify to the board of election commissioners the name of a candidate who fails to comply with this section." *Id*. Following the 2018 amendment of MCL 168.558(4), the last sentence now provides, "An officer shall not certify to the board of election commissioners the name of a candidate who fails to comply with this section, *or the name of a candidate who executes an affidavit of identity that contains a false statement with regard to any information or statement required under this section*." (Emphasis added.) The addition of the emphasized language in MCL 168.558(4) undercuts the *Bsharah* Court's conclusion that a county clerk's duty is limited to determining whether the necessary statements were made. Under the unambiguous language of the amended statute, the Clerk's duty is clear—if a candidate's AOI contains a false statement, the Clerk cannot certify that candidate's name to the Election Commission. And as this Court explained in *Berry*, MCL 168.567 requires the Election Commission to correct ballot errors. *Berry*, 316 Mich App at 44.

Wayne County defendants and Worthy make much of the Legislature's failure to enact express statutory authority for the Clerk to investigate the veracity of a candidate's statements in an AOI or resolve a challenge regarding the same, despite having established clear authority for such investigations in other election-related matters. See MCL 168.552 (describing procedures

---

[4] "Unpublished decisions of this Court are not precedentially binding, MCR 7.215(C)(1), but may be considered instructive or persuasive, *Sau-Tuk Indus, Inc v Allegan Co*, 316 Mich App 122, 137; 892 NW2d 33 (2016)." *Broz v Plante & Moran, PLLC*, 331 Mich App 39, 47 n 1; 951 NW2d 64 (2020).

for challenges regarding nominating petitions). According to Wayne County defendants and Worthy, the Legislature's silence on this point in MCL 168.558(4) demonstrates that it did not intend to impose an investigative duty on the Clerk in this context. This position is unpersuasive because it ignores the narrow scope of the mandamus relief sought by plaintiff.

Plaintiff did not ask the court to order Wayne County defendants to investigate or assess the truth of Worthy's affirmation regarding her campaign filings—she asked only that Wayne County defendants be ordered to remove Worthy's name from the August 2020 primary election ballot. Plaintiff coupled this request with a declaratory judgment claim asking the court—not Wayne County defendants—to determine that Worthy made a false statement on her AOI. If the court had determined that plaintiff's allegation was correct, the Clerk would then have a clear legal duty to not certify Worthy for inclusion on the primary election ballot. MCL 168.558(4). And to the extent that her name already appeared on the printed ballots, the Election Commission was obligated to correct that error. MCL 168.567. Moreover, both of these actions would be purely ministerial because they would not require exercise of judgment or discretion. *Berry*, 316 Mich App at 44-45. See also *Barrow v Detroit Election Comm*, 301 Mich App 404, 412; 836 NW2d 498 (2013) ("The inclusion or exclusion of a name on a ballot is ministerial in nature."). The trial court's denial of mandamus on the merits was premature in light of plaintiff's unresolved declaratory judgment claim.

However, the trial court's denial of mandamus was not premised solely on the merits of plaintiff's claim. As it did with respect to Davis's motion to intervene, the trial court applied laches as a bar to plaintiff's complaint because plaintiff could have pursued her challenge any time after Worthy filed her AOI on March 18, 2020, yet plaintiff waited until the ballot printing was nearing completion. The trial court's reasoning was somewhat factually inaccurate in that plaintiff initiated this action on June 5, 2020, i.e., the day *before* ballot printing began and the same day she learned that (1) the Clerk's certified candidate list included Worthy and (2) the Election Commission voted to print the ballots with the names certified by the Clerk.

Nonetheless, the trial court's point remains—plaintiff could have challenged Worthy's AOI much earlier, at a time that would not obstruct the ballot printing process.[5] We acknowledge that a mandamus action would not have presented a ripe controversy before June 5, 2020, but plaintiff could have pursued a declaratory judgment that Worthy's AOI contained a false statement, thereby rendering her ineligible for certification under MCL 168.558(4). Laches can be invoked when "there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party." *Wayne Co*, 267 Mich App at 252, quoting *Pub Health Dep't*, 452 Mich at 507 (quotation marks omitted). In this instance, plaintiff's delay caused substantial prejudice to Wayne County defendants because it impaired their ability to produce the primary election ballots within the time frame required by statute and exposed them to significant financial waste if reprinting was required. Consequently, the trial court did not err by determining that plaintiff's action was barred by laches.

---

[5] The trial court's reasoning applies equally to Davis. Davis did not need to wait for plaintiff to file this lawsuit; he could have initiated his own action any time after Worthy filed her AOI in March 2020.

## V. DECLARATORY JUDGMENT

Lastly, Davis argues that the trial court should have granted plaintiff's request for a declaratory judgment. "Questions of law relative to declaratory judgment actions are reviewed de novo, but the trial court's decision to grant or deny declaratory relief is reviewed for an abuse of discretion." *Barrow*, 305 Mich App at 662, quoting *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 376; 836 NW2d 257 (2013) (quotation marks omitted). "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Barrow*, 305 Mich App at 662, quoting *Saffian*, 477 Mich at 12 (quotation marks omitted; alteration in original).

"The purpose of a declaratory judgment is to definitively declare the parties' rights and duties, to guide their future conduct and relations, and to preserve their legal rights." *Barrow*, 305 Mich App at 662. "In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(A)(1). The "actual controversy" requirement is met when "a plaintiff pleads and proves facts demonstrating an adverse interest necessitating a judgment to preserve the plaintiff's legal rights." *Mich Ass'n of Home Builders v City of Troy*, 504 Mich 204, 225; 934 NW2d 713 (2019). An actual controversy has also been described as existing "when a declaratory judgment is needed to guide a party's future conduct in order to preserve that party's legal rights." *League of Women Voters*, ___ Mich at ___; slip op at 17. Although a court may enter a declaratory judgment before an injury or loss occurs, hypothetical or anticipated disputes will not suffice—there must be a present controversy before the court. *Id*.

In this case, there was an actual and present controversy before the court that required judgment to guide the parties' future conduct and rights with respect to Worthy's inclusion on the 2020 primary election ballot. Although the court did not address this issue, we can reasonably infer that the trial court's application of laches extended to plaintiff's declaratory judgment count. For the reasons discussed above, the trial court did not err by concluding that plaintiff's delay in challenging Worthy's AOI precluded her claims. The trial court's reasoning is even more compelling in the context of a declaratory judgment claim because such a claim would have been ripe for review well before the Clerk certified the candidates for the 2020 primary election and the Election Commission approved ballot printing. As such, the trial court did not err by dismissing plaintiff's action.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto
/s/ Anica Letica