*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN REPUBLICAN PARTY and
REPUBLICAN NATIONAL COMMITTEE,

        Plaintiffs-Appellants,

v

DAVINA DONAHUE, WILLIAM KIM, and
STACEY KAAKE,

        Defendants-Appellees.

FOR PUBLICATION
March 7, 2024
9:10 a.m.

No. 364048
Genesee Circuit Court
LC No. 22-118123-AV

Before: M. J. KELLY, P.J., and JANSEN and GARRETT, JJ.

M. J. KELLY, P.J.

In this case under the Michigan Election Law, MCL 168.1 *et seq*.,[1] plaintiffs, the Michigan Republican Party and the Republican National Committee, appeal by right the trial court's order granting summary disposition in favor of defendants, Davina Donahue, William Kim, and Stacie Kaake,[2] under MCR 2.116(I), on the basis that plaintiffs lacked standing to bring their claims. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Plaintiffs initiated this action for declaratory relief and mandamus based upon their allegations that, before the August 2, 2022 primary and the November 8, 2022 general election,

---

[1] Sections of the Michigan Election Law were recently amended by our Legislature. See 2024 PA 259. Because the amendments do no substantively alter the statutory provisions at issue in this case, for ease of reference, citations to the pertinent statutory sections are to the current version of the statute.

[2] During the dispute in this case, Donahue was the interim Flint city clerk, Kim was the Flint city attorney, and Kaake was the Flint city assessor. All defendants were members of the Flint board of election commissioners.

the city of Flint's board of election commissioners violated the requirements stated in MCL 168.674 and MCL 168.765a, which require that a city's board of election commissioners shall appoint, "as nearly as possible," the same number of election inspectors[3] from each major political party to work each in-person-voting election precinct and absent voter counting board.

According to plaintiffs' verified complaint, on May 12, 2022, they provided to the then-Flint city clerk (Donahue's predecessor) the applications of 122 Republicans who sought appointment to work as election inspectors in the August 2, 2022 primary election. The board of election commissioners, however, appointed 442 Democrat election inspectors and only 27 Republican election inspectors. After plaintiffs complained about how few Republicans had been appointed, the board of election commissioners appointed an additional 22 Republicans to work as election inspectors in the primary election.

Thereafter, on September 9, 2022, plaintiffs sent a letter to the then-city clerk with a list of 61 Republicans interested in working as election inspectors for the November 8, 2022 general election and asking for the clerk's written assurance that the clerk would contact and seek to appoint each of the 61 people listed. On October 15, 2022, the board of election commissioners appointed 562 election inspectors, but only 57 were Republicans. Plaintiffs also received anecdotal reports that city election officials were turning away Republicans who inquired about serving as election inspectors. On October 21, 2022, plaintiffs sent a letter to defendants asking the board of election commissioners to fulfill its statutory duty to appoint, as nearly as possible, an equal number of election inspectors from each major political party. Plaintiffs also requested that the board of election commissioners take affirmative steps to recruit Republican election inspectors and facilitate their appointments. In response, on October 25, 2022, the Flint city attorney stated that the board of election commissioners had, at that time, appointed over 120 Republican election inspectors and that the board intended to continue contacting the potential Republican election inspectors that plaintiffs had previously identified.

Three days later, on October 28, 2022, plaintiffs filed their complaint against defendants, alleging violations of MCL 168.674 and MCL 168.765a. In their prayer for relief, plaintiffs sought a declaratory judgment determining that the board of election commissioners was violating its statutory duties regarding the partisan appointment of election inspectors. Plaintiffs also asked the trial court to require the board of election inspectors to take several affirmative steps that plaintiffs identified to recruit Republican election inspectors. Plaintiffs sought expedited proceedings and requested an ex parte show-cause order requiring defendants to file an answer to plaintiffs' complaint by noon on November 1, 2022. On October 31, 2022, the trial court entered a show-cause order directing defendants to file an answer by 5:00 p.m. on November 1, 2022, and the court scheduled the hearing for 12:30 p.m. on November 2, 2022.

On November 1, 2022, defendants answered the trial court's show-cause order and filed a brief in opposition to plaintiffs' request for writs of mandamus. As relevant to the issues raised on appeal, defendants argued that they were entitled to summary disposition of plaintiffs' claims because plaintiffs lacked standing to challenge the partisan composition of election-inspector

---

[3] Election inspectors are the poll workers who administer in-person voting and count ballots.

appointees. Following the show-cause hearing, the trial court agreed, and entered an order dismissing plaintiffs' claims without prejudice. This appeal follows.

## II. MOOTNESS

We must first address defendants' assertion that the issues raised on appeal are moot. "The applicability of a legal doctrine, such as mootness, is a question of law which this Court reviews de novo." *Can IV Packard Square v Packard Square LLC*, 328 Mich App 656, 661; 939 NW2d 454 (2019) (quotation marks and citation omitted). Whether a case is moot is an issue that may be raised by a party at any time, and it is a threshold question that a court must address before considering the substantive issues of the case. *Equity Funding Inc v Milford*, 342 Mich App 342, 349; 994 NW2d 859 (2022). "As a general rule, this Court does not decide moot issues." *Can IV Packard Square*, 328 Mich App at 661. "An issue is moot if an event has occurred that renders it impossible for the court to grant relief." *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). "An issue is also moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy." *Id*. This case arises from an alleged violation of election laws before the November 8, 2022 general election, which has already occurred. Consequently, this case is moot regarding the 2022 general election because there is no relief that this Court can provide to remedy any breach of election laws during that election.

"However, a moot issue will be reviewed if it is publicly significant, likely to recur, and yet likely to evade judicial review." *Barrow v Detroit Election Comm*, 305 Mich App 649, 660; 854 NW2d 489 (2014). An election-law issue is typically one of public significance when the "interpretation and application of Michigan's election laws extend beyond" a particular election and affect "future candidates and the public." *Gleason v Kincaid*, 323 Mich App 308, 315-316; 917 NW2d 685 (2018). Here, the question regarding who can seek enforcement of MCL 168.674 and MCL 168.765a extends beyond the 2022 general election. The issue is not confined to the circumstances of a particular elected office or ballot question in a single election. Election inspectors must be appointed to work at every election. MCL 168.672. Boards of election commissioners are required to appoint election inspectors from each major political party in equal-as-possible numbers for each election, and major county party chairpersons are entitled to challenge the appointment of individual election inspectors in every election in which a state or federal office appears on the ballot. MCL 168.674(2)—(3). Therefore, whether a major political party has standing to enforce the partisan-composition requirements of MCL 168.674(2) and MCL 168.765a(2) is a question of public significance.

The issue of who has standing to enforce the partisan-composition requirements is also likely to recur. An issue is likely to recur when a statute at issue is expected to be implemented again in the future. *T & V Assoc, Inc v Dir of Health & Human Servs*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 361727); slip op at 4, lv pending. Regarding election law, an issue is considered likely to recur when it is expected that the same controversy will arise in future elections. *Barrow*, 305 Mich App at 660. Unless the partisan-composition requirements of MCL 168.674(2) and MCL 168.765a(2) are repealed, they will be implemented in every election. Moreover, the fact that MCL 168.674 sets forth a process by which the county chair of a major political party may challenge election-inspector appointments shows that partisan challenges to election-inspector appointments are expected. Consequently, challenges to the partisan

composition of slates of election-inspector appointees—and who has standing to enforce the requirements—are likely to recur.

Finally, election inspectors are appointed at least 21 days before an election. MCL 168.674(1).[4] Even if this Court expeditiously considered an appeal in a similar challenge, it is unlikely any relief could be implemented before an election. If this Court ordered a board of election commissioners to recruit and appoint more election inspectors from a particular party, the board would then have to actually recruit people and make the appointments. From the time appointments are made, the process for major party county chairpersons to challenge the qualifications of individual election inspectors can last up to eight days. MCL 168.674(3) and (4). Further, the election inspectors must be trained before election day. MCL 168.683. In light of "the strict time constraints" necessitated by the election process, "in all likelihood, such challenges often will not be completed before a given election occurs, rendering the discussion, as in this case, moot before appellate review." *Gleason*, 323 Mich App at 316. Therefore, the issue is likely to evade judicial review.

In sum, although the issues raised in this case are moot as to the 2022 general election, because the case involves a matter of public significance that is likely to recur, yet evade judicial review, we will reach the merits of the appeal.

## III. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Plaintiffs argue that the trial court erred by granting summary disposition under MCR 2.116(I)(1) because, contrary to the trial court's determination, they have standing to bring their claims. This Court reviews de novo a trial court's decision to grant summary disposition. *Sobiecki v Dep't of Corrections*, 271 Mich App 139, 140; 721 NW2d 229 (2006). Under MCR 2.116(I)(1), "[i]f the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay." Whether a party has standing is a question of law that is reviewed de novo. *Connell v Lima Twp*, 336 Mich App 263, 281; 970 NW2d 354 (2021). Likewise, we review de novo questions of statutory interpretation. *Id.*

### B. ANALYSIS

The appointment of election inspectors is partisan in nature. Those applying to be election inspectors must designate their political party affiliation. MCL 168.677(2). On or before May 15 of each year, "the county chair of a major political party may submit to the city or township clerks in that county a list of individuals who are interested in serving as an election inspector in that

---

[4] Under the version of the statute in effect at the time of the 2022 general election, MCL 168.674(a) provided that election inspectors had to be appointed between 21 and 40 days before each election. See 2018 PA 120. Because the issues related to the 2022 primary are moot, we rely upon the time limits that will, likely, be present during future disputes.

county." MCL 168.673a.[5] Each voting precinct must have at least three election inspectors. MCL 168.672. A city's board of election commissioners is required to appoint at least three election inspectors to each precinct and may appoint as many election inspectors as, in the board's opinion, are "required for the efficient, speedy, and proper conduct of the election." MCL 168.674(1). "The board of election commissioners shall appoint at least 1 election inspector from each major political party and shall appoint an equal number, as nearly as possible, of election inspectors in each election precinct from each major political party." MCL 168.674(2). "The board of election commissioners may appoint as election inspector an individual on the list submitted by a major political party . . . ." MCL 168.674(1). Election-inspector appointments must be made at least 21 days before election day. MCL 168.674(1). Within two days of appointing election inspectors, a board of election commissioners must, in writing, notify "the county chair of each major political party of the names and political party affiliations of appointed election inspectors and the precincts to which those inspectors were appointed." MCL 168.674(2).

Under MCL 168.764d, a city clerk may enter into an agreement with other cities to create an absent voter counting board that counts all the absentee votes from each participating city. The same rules regarding the process for appointing partisan election inspectors for in-person voting at precincts apply to the appointment of election inspectors to an absent voter counting board. MCL 168.765a(2) and (4). There must always be at least one election inspector from each major political party present at an absent voter counting board. MCL 168.765a(8).

The county chairperson of a major political party has a statutory right to challenge an individual's appointment to serve as an election inspector. MCL 168.674(3). Within four days of receiving the list of appointed election inspectors from a board of election commissioners, a major political party county chairperson may challenge an individual election inspector's appointment on the basis of the "qualifications of the election inspector, the legitimacy of the election inspector's political party affiliation, or whether there is a properly completed declaration of political party affiliation in the application for that election inspector on file in the clerk's office." MCL 168.674(3). A major party county chairperson's challenge to an election inspector's appointment is brought to the city's board of election commissioners. MCL 168.674(3). If the challenge is to the appointee's political affiliation, the appointee is given two business days to respond to the challenge, and the appointment is revoked if the appointee does not respond. MCL 168.674(4). The board must decide the partisan challenge and notify the county chairperson of the decision within two business days of receiving the appointee's response. MCL 168.674(4).

MCL 168.674 does not explicitly grant a major party county chairperson a right to challenge the requirement that the board must appoint, as nearly as possible, an equal number of election inspectors from each major political party to each election precinct. See MCL 168.674. Indeed, MCL 168.674(2) and MCL 168.765a(2) are silent regarding who, if anyone, has standing

---

[5] The Republican party is a major political party. See MCL 168.16 (stating that the major political parties are "the 2 political parties whose candidate for the office of secretary of state received the highest and second highest number of votes at the immediately preceding general election in which a secretary of state was elected.").

to enforce the partisan-composition. On appeal, plaintiffs argue that, under *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349; 792 NW2d 686 (2010), they have standing.

In *Lansing Sch*, the Supreme Court explained that, historically, "[t]he purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy." *Id.* at 355 (quotation marks and citation omitted). Under the doctrine, "the standing inquiry focuses on whether a litigant is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable." *Id.* (quotation marks and citation omitted). In *Lansing Sch*, the Court held that

> a litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment. Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [*Id.*]

Plaintiffs concede that they do not have a legal cause of action because MCL 168.674 and MCL 168.765a do not create an explicit statutory right for a major political party to sue to enforce the partisan-composition provisions.[6] Plaintiffs argue instead that they have standing to enforce the partisan-composition provisions because (1) they meet the requirements for seeking a declaratory judgment under MCR 2.605, (2) they have a special right, a special injury, or a substantial interest, which is detrimentally affected in a manner different from the citizenry at large, and (3) the statutory scheme implies that the Legislature intended to confer standing upon the major political parties to enforce the partisan-composition requirements.

We first address plaintiffs' argument that the statutory scheme implies that the Legislature intended to confer standing upon them to enforce the partisan-composition requirements. Generally, "ordinary citizens have standing to enforce the law in election cases." *Deleeuw v State Bd of Canvassers*, 263 Mich App 497, 506; 688 NW2d 847 (2004). That is "because without the process of elections, citizens lack their ordinary recourse." *Id.* at 505-506. However, when there is a "statute to the contrary," a private person may not seek mandamus to enforce an election law "without showing a special interest distinct from the interest of the public." *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 587; 957 NW2d 731 (2020).

In *White v Highland Park Election Comm*, 312 Mich App 571, 573; 878 NW2d 491 (2015), this Court held that the provisions of MCL 168.674(3) and (4) that allow major party chairpersons to challenge the appointment of individual election inspectors strips the right to seek enforcement

---

[6] It is worth noting that, because MCL 168.674 and MCL 168.765a do not create an explicit statutory right for the chair of a major political party to sue to enforce the partisan-composition provisions, such an individual also lacks a legal cause of action and would have to rely upon the alternative methods set forth in *Lansing Sch* in order to establish standing to enforce the partisan-composition requirements.

of the partisan-composition provision of MCL 168.674(2) from citizens who do not have a special interest in the enforcement of the statute. This Court's decision in *White* indicates that major party county chairpersons are essentially delegated the responsibility to enforce the partisan-composition provision of MCL 168.674(2) on behalf of the major political parties. *Id*. Plaintiffs argue that, nevertheless, the statutory framework implies that the Legislature intended for major political party state and national organizations to enforce the partisan-composition provisions of MCL 168.674(2) and MCL 168.765a(2).

Plaintiffs' central contention is that MCL 168.674(2) confers a right to partisan parity of election-inspector appointments to major political parties' state and national organizations, whereas MCL 168.674(3) and (4) create a separate and distinct right for major party county chairpersons regarding challenges to individual election-inspector appointments. In support of their positions, both plaintiffs and defendants invoke the doctrine of *expressio unius est exclusion alterius*, which means "the expression of one thing is the exclusion of another." See *Mich Ambulatory Surgical Ctr v Farm Bureau Gen Ins Co of Mich*, 334 Mich App 622, 632; 965 NW2d 650 (2020). Under the *expressio-unius* doctrine, it is presumed that, when the Legislature employs a list or series in a statute, the Legislature intended to exclude all items that are not listed. *Id*. Plaintiffs argue that by expressly granting major party county chairpersons the authority to challenge the qualifications of individual election-inspector appointees, the Legislature intended to exclude from county chairpersons the authority to challenge the overall partisan composition of election-inspector appointees. Defendants, on the other hand, argue that by expressly giving authority to only county chairpersons regarding partisan challenges to election-inspector appointees, the Legislature intended to exclude all others from making partisan challenges to the appointment of election inspectors.

Given that it appears that the *expressio-unius* doctrine could be invoked by both parties, we conclude that the more appropriate canon of statutory construction to employ is *casus omissus pro omisso habendus est* (nothing is to be added to what the text states or reasonably implies). See *Id*. Under *casus-omissus* doctrine, a court is prohibited "from supplying provisions omitted by the Legislature." *Id*.

Here, considering the Michigan Election Law as a whole, it can be properly concluded that the Legislature intended to omit a right for major political party state and national organizations to challenge the partisan composition of a slate of election-inspector appointees. Indeed, the Legislature has shown that it knows how to give authority to a major political party's statewide organization when it chooses to do so. Under the Michigan Election Law, the state board of canvassers is responsible for receiving the election results from across the state, determining the outcome of each election and ballot question, and certifying the results. MCL 168.841(1). The Legislature has given the state central committee of each major political party the ability to nominate three of its members for appointment to the state board of canvassers and submit those nominees to the governor. MCL 168.22a(1).[7] In addition, the Legislature has (recently) directed that the majority leaders and minority leaders shall also submit the names of one individual to

---

[7] Under the recently amended version of MCL 168.22a, a nominating role is also given to the majority and minority leaders in the senate and house. See MCL 168.22a(1)(b).

serve as nominee for each position that is up for reappointment of that major political party. MCL 168.22a(1)(a). Further, under the recently amended version of MCL 168.22a, a nominating role is also given to the majority and minority leaders in the senate and house. See MCL 168.22a(1)(b). The governor is then required to appoint one of the nominated individuals to the state board of canvassers. MCL 168.22a(1). If a state central committee of a major political party or the majority or minority leaders of the same major political party fail to provide nominees to the governor, the governor is, nevertheless, required to nominate a member of that major political party to the state board of canvassers. MCL 168.22a(5).

The Legislature has also given state and national parties the ability to have direct control over who may monitor election inspectors' administration of polling and ballot counting. Poll inspectors are not the only volunteers the major parties rely upon to promote the integrity of elections at polling and ballot-counting facilities. Political parties and other interested organizations have a statutory right to appoint election challengers and coordinate election challengers' activities. MCL 168.730(1) and (3). Election challengers have the right to raise challenges to a person's right to vote, perceived election process violations by election inspectors, and perceived violations of ballot-counting procedures. MCL 168.733(1). State or local officials must approve a party or organization's eligibility to appoint election challengers. MCL 168.731(1).

In contrast, MCL 168.674 and MCL 168.765a do not provide any role directly to the state or national organizations of major political parties. A board of election commissioners' duty to make partisan appointments is independent of the actions of a major political party's state and national organizations. The statutes only give a role to major political party county chairpersons, and that role is limited. Major party county chairpersons may submit lists of prospective election-inspector appointees to city clerks. MCL 168.673a. However, prospective election inspectors must apply for the position directly to a city clerk. MCL 168.677(1). Boards of election commissioners may, but are not required to appoint candidates from a county chairperson's list. MCL 168.674(1). Thus, MCL 168.674(1) anticipates that a board of election commissioners will not rely exclusively on the major party county chairpersons, or the efforts of state and national organizations, to fulfill the partisan-composition requirements. Moreover, after making election-inspector appointments, a board of election commissioners is required to send a list of appointees and their party affiliations to major party county chairpersons, not the major political parties' state or national organizations. MCL 168.674(2).

To construe MCL 168.674 and MCL 168.765a as granting to major political parties' state and national organizations a right to enforce the partisan-composition provisions would read into the statutes provisions that the Legislature did not include. The Legislature has shown in other statutes that it knows how to give authority to major political parties' state or national organizations. The responsibility for appointing as-equal-as-possible numbers of election inspectors from the two major political parties rests with boards of election commissioners. The statutes at issue in this case only offer a role to county chairpersons to assist boards of election commissioners in locating prospective election inspectors to meet the partisan-composition requirements. The Legislature has not given state or national political party organizations a role in that process. Therefore, major political party county chairpersons, not plaintiffs, are the proper parties to litigate the responsibilities of boards of election commissioners to fulfill their statutory obligations. See *White*, 312 Mich App at 573.

In conclusion, the statutory schemes of MCL 168.674 and MCL 168.765a do not imply that the Legislature intended to confer standing upon major political parties to enforce the partisan-composition requirements of the statutes. Plaintiffs do not have standing on that basis to bring their claims in this case.

We next address plaintiffs' argument that they have standing to enforce the partisan-composition requirements of MCL 168.674(2) and MCL 168.765a(2) on the basis that they have a special injury, right, or substantial interest regarding the enforcement of the statutes. Although this Court has not addressed whether major political parties have standing to enforce the partisan-composition provisions of MCL 168.674(2) and MCL 168.765a, this Court has addressed the issue as it pertains to an individual. See *White*, 312 Mich App at 572. In *White*, the plaintiff, an individual, brought an action seeking a declaratory judgment against the Highland Park Election Commission and a writ of mandamus to require the commission to appoint Republican election inspectors when no Republicans had applied for the position or been appointed. *Id*. The trial court ruled that the plaintiff lacked standing to pursue the claims. *Id*. This Court agreed, reasoning as follows:

> . . . MCL 168.674(2) provides no legal cause of action, neither to White nor to any other member of the public, to enforce its provisions. Nor does White, who as to this issue is no different than all other members of the public (and she did not even allege that she was a resident of Highland Park, where the electors would have been working), have a substantial interest in seeing the statute enforced. See *Lansing Sch Ed Ass'n*, 487 Mich at 372. Indeed, the statute explicitly gives the right to enforce the political party designations to the major political party county chairs, MCL 168.674(3), which is consistent with other parts of the statute that allow those same county chairs to submit names on behalf of their parties to city election officials for use as election inspectors. See MCL 168.673a and MCL 168.674(1). As noted, the statute does not provide for a civil cause of action, but instead provides county chairs with the ability to file administrative appeals to challenge certain inspector appointments. MCL 168.674(3) and (4). In essence, the Legislature has created a form of public enforcement through an administrative appeal process, and has made that process available only to county chairs of the major political parties. White does not have standing to sue to enforce the provisions of MCL 168.674. [*Id*. at 573.]

Plaintiffs do not argue that *White* was incorrectly decided. Rather, they argue that the trial court erred by applying *White* to this case without separately considering the test for standing articulated in *Lansing Sch*. According to plaintiffs, the holding in *White* only applied to the specific facts of that case. We agree because, although the *White* Court applied the standing test from *Lansing Sch* to an individual, it did not address whether the standing analysis would be different for a major political party. *Id*. at 572-573. Therefore, the decision in *White* is instructive, but not dispositive. We must, therefore, consider whether plaintiffs have shown under the analysis from *Lansing Sch* that they have a special injury, right, or a substantial interest regarding the enforcement of the partisan-composition provisions that is different from the interest of the public at large.

In *Lansing Sch*, the Supreme Court considered whether the plaintiffs had standing to bring claims on the basis that the statute at issue conferred upon them a substantial interest or a special right that, if violated, would injure them in a way that was different from the injury suffered by the public at large. *Lansing Sch*, 487 Mich at 373. The plaintiffs were four Lansing School District teachers, the Lansing Schools Education Association, the Michigan Education Association, and the National Education Association. *Id*. at 353. The teachers alleged that they were physically assaulted by students in a school and the students were suspended, but not expelled. *Id*. The plaintiffs filed suit against the Lansing School District and the Lansing Board of Education seeking a declaratory judgment, injunctive relief, and a writ of mandamus to force the defendants to enforce MCL 380.1311a(1), which requires a school district to expel a student who physically assaults a school employee at school. *Id*. at 353-354. The Court concluded that the plaintiffs had standing "because they have a substantial interest in the enforcement of MCL 380.1311a(1) that will be detrimentally affected in a manner different from the citizenry at large if the statute is not enforced." *Id*. at 373. The Court observed that "the purpose of the section is to create a safer school environment and, even more specifically, a safer and more effective working environment for teachers." *Id*. at 374. The teachers' interest in enforcing that right was different from the citizenry at large because members of the public are generally not inside schools and only an assault against a school employee led to the mandatory expulsion of the offending student. *Id*. Therefore, the statute conferred upon the teachers a right to be protected from physical assault and the plaintiffs had standing to seek enforcement of that statutory right. *Id*. at 376.[8]

In *Detroit Fire Fighters Ass'n v Detroit*, 449 Mich 629; 537 NW2d 436 (1995), the Supreme Court considered another case involving whether the plaintiffs had an interest that was different from the public at large. In that case, the Detroit city council had appropriated funds for the city to hire more firefighters, and the mayor of Detroit refused to spend the appropriated funds for that purpose. *Id*. at 632. The Detroit Fire Fighters Association and several of its firefighter-members sought a writ of mandamus to require the mayor to spend the funds that the city council had appropriated and hire more firefighters. *Id*. The plaintiffs alleged that the firefighters suffered a unique injury because the failure of the city to hire more firefighters caused the existing

---

[8] The Court held that the professional organization plaintiffs had standing in the case because it was undisputed that the teacher-plaintiffs were members of the professional organizations and an organization has standing to litigate the interests of its members when the members personally have standing. *Lansing Sch*, 487 Mich at 373 n 21. Plaintiffs briefly contend that they have organizational standing based upon the interests and rights of the individual Republican election inspectors that allegedly lost their opportunity to serve as election inspectors due to the actions of defendants. We disagree. Plaintiffs have not shown that their individual members would have standing to challenge a board of election commissioners' decision to not appoint them to an election inspector position. In general, individuals do not have a right to hold an appointed governmental position. *Aguirre v Michigan*, 315 Mich App 706, 717; 891 NW2d 516 (2016). Moreover, MCL 168.674(1) and (2) do not require that any person in particular be appointed. Plaintiffs argument, therefore, lacks merit.

A closer question, and one not raised on appeal, is whether plaintiffs would have organizational standing based upon the rights and interests of the Republican chair for Genesee County. Because the issue has not been raised, we decline to consider it.

firefighters to incur greater risks of physical harm, emotional distress, and a loss of morale, as well as alleging that the department would lose efficiency of operations. *Id*. at 635. The Court held that the plaintiffs did not suffer an injury unique from the general public. *Id*. at 638. The Court noted that a firefighter who fights 200 fires a year is at greater risk of injury than a firefighter who fights 100 fires a year. *Id*. However, the Court concluded that having fewer firefighters in the fire department increased the risk of physical harm for both the firefighters and the residents of the city who were at danger during fires. *Id*. Therefore, the plaintiffs lacked standing because the interest in having more firefighters employed by the city was shared between the members of the fire department and the members of the public at large. *Id*.

This case is more similar to *Detroit Fire Fighters* than it is to *Lansing Sch*. In *Lansing Sch*, the statute at issue was designed to protect school employees from physical harm and to help teachers better educate students. *Lansing Sch*, 487 Mich at 374. There was a benefit conferred directly upon school employees that was in service to the broader goal of providing a better education to students. The benefit to the public at large was attenuated from the primary purpose of the statute. Here, the benefit of the statute is not as directly conferred upon major political parties as it was upon the teachers in *Lansing Sch*. Rather, the partisan-composition requirements of MCL 168.674(2) and MCL 168.765a(2) create a right for major political parties insofar as they make it easier for the major political parties to help protect the integrity of elections. However, the statutes at issue in this case cannot be interpreted as providing some benefit or assistance to a major political party toward having its candidates elected. The Michigan Constitution requires the Legislature to preserve the "purity" of elections. 1963 Const, art II, § 4. Statutes must be construed in a manner that is constitutional when possible. *Coalition Protecting Auto No-Fault v Mich Catastrophic Claims Ass'n*, 317 Mich App 1, 24; 894 NW2d 758 (2016). Although the Michigan Election Law gives the major political parties a role in the administration of elections, the statutes must be read as a means of preserving the purity of elections. The benefit to a major political party of having its candidate elected is ancillary to the goal of ensuring the proper outcome of an election. The benefit of the partisan-composition provisions of MCL 168.764(2) and MCL 168.765a(2) is conferred upon the public at large. Having equal numbers of election inspectors from both major political parties serves a checks-and-balances function in the administration of elections. When an equal number of election inspectors are members of each major political party, there is a reduced chance that a party's members will commit improprieties. In that regard, partisan balance also offers to the public some assurance of propriety in polling and ballot counting because the public knows that one major political party has not been allowed to administer an election unchecked. That is, like in *Detroit Fire Fighters*, the intent behind the legislation at issue is to provide a benefit to the public at large. See *Detroit Fire Fighters*, 449 Mich at 638. In *Detroit Fire Fighters*, the plaintiffs had the most to gain from the hiring of new firefighters, but that interest was secondary to the primary goal behind the legislation, which was to provide greater safety to the public. Similarly, in this case, the legislation at issue is helpful to major political parties. But the overall benefit of the statutes falls upon the public at large. The benefit of election integrity is shared by each member of the public, rather than benefiting major political parties more than the public. Therefore, plaintiffs do not have a special right or a substantial interest in the enforcement of MCL 168.674(2) and MCL 168.765a(2) that is different from the public and do not have standing to enforce the statutes on that basis.

Plaintiffs also contend that they suffered a special injury because they expended time and resources to recruit Republican election-inspector candidates and they were injured when the board

of election commissioners did not appoint those candidates. Plaintiffs were not injured in a unique way on the basis of any violations of MCL 168.674(2) and MCL 168.765a(2). The statutes do not give a direct role to the major political parties' state or national organizations in the appointment of partisan election inspectors and a board of election commissioners is not required to appoint election-inspector candidates that are identified by major political parties. MCL 168.674(2) and MCL 168.765a(2) did not require defendants to act in response to plaintiffs' efforts. Therefore, any alleged injury plaintiffs suffered regarding unrequited efforts to have Republican election-inspector candidates appointed was not a result of noncompliance with MCL 168.674(2) and MCL 168.765a(2). Stated differently, defendants' actions (or inactions) did not injure plaintiffs because defendants were not required to act in any particular way in response to plaintiffs' recruitment activities. Thus, plaintiffs have not shown that they suffer a special injury when the partisan-composition provisions of the statutes are violated.

In conclusion, plaintiffs have not shown special injury, right, or a substantial interest in the enforcement of the partisan-composition provisions of MCL 168.674(2) or MCL 168.765a(2). Therefore, plaintiffs do not have standing to enforce the statutes on that basis.

Finally, plaintiffs argue that they have standing to pursue a declaratory judgment pursuant to MCR 2.605. Under MCR 2.605(A)(1):

> In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

In *Rose v State Farm Mut Auto Ins Co*, 274 Mich App 291, 294; 732 NW2d 160 (2006), this Court explained:

> The purpose of a declaratory judgment is to enable the parties to obtain adjudication of rights before an actual injury occurs, to settle a matter before it ripens into a violation of the law or a breach of contract, or to avoid multiplicity of actions by affording a remedy for declaring in expedient action the rights and obligations of all litigants.

"[T]o assert a claim for declaratory judgment under MCR 2.605, the plaintiff (1) must allege a 'case of actual controversy' within the jurisdiction of the court, and (2) the claimant must be an 'interested party seeking a declaratory judgment.' " *T & V Assoc*, ___ Mich App at ___; slip op at 6.

We first consider whether plaintiffs are interested parties under MCR 2.605. "Generally, a party has standing if the party has a real interest in the cause of action or the subject matter of the cause of action." *Id*. at ___; slip op at 7. When considering standing in the context of MCR 2.605, "a party's interest is sufficient if the party has a legally protected interest that is in jeopardy of being adversely affected . . . ." *Id*. at ___; slip op at 6.

Although it does not appear that this Court or the Supreme Court has offered a definitive statement, this Court's post-*Lansing-Sch* decisions indicate that the inquiry into whether a plaintiff has a sufficient interest to seek a declaratory judgment is not substantively different from the inquiry into whether a plaintiff can establish standing by showing a special injury, right, or

-12-

substantial interest created by the statute. In *Lansing Sch*, the Court did not analyze whether the plaintiffs could fulfill the requirements to obtain a declaratory judgment and remanded the case to this Court for consideration of that issue. *Lansing Sch*, 487 Mich at 373. On remand, the *Lansing Sch* Court determined that the plaintiffs had an interest to seek a declaratory judgment on the basis that the Supreme Court had held that the plaintiffs had established a substantial interest in the enforcement of the statute at issue, without further inquiry. *Lansing Sch Ed Ass'n v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 517; 810 NW2d 95 (2011). In another case, employees of Central Michigan University (CMU) sought a declaratory judgment to stop a university policy from being implemented that would have restricted employees' rights to run for public office. *UAW v Central Mich Univ Trustees*, 295 Mich App 486, 489-493; 815 NW2d 132 (2012). This Court held that the employees had standing to seek a declaratory judgment regarding the policy "because the university employees have a special and substantial interest in ensuring that the CMU officials' policies do not violate their statutory rights under the Act, and that interest is different from any rights or interests of the public at large." *Id*. at 497, citing *Lansing Sch*, 487 Mich at 372. Thus, this Court has used substantively the same language for determining whether a party has a sufficient interest to pursue a declaratory judgment as it uses to determine whether a party has standing to bring an action on the basis of having a special injury, right, or a substantial interest in the enforcement of a statute. Without deciding that one cannot show an interest sufficient to seek a declaratory judgment without also meeting the requirements to show a special injury, right, or a substantial interest, it can be concluded that the inquiries are, at least, very similar.

Here, plaintiffs cannot show that they are interested parties who are entitled to a declaratory judgment. Plaintiffs do not have a legally protected interest in the enforcement of MCL 168.674(2) and MCL 168.765a(2) that is in jeopardy of being adversely affected that is different from the interest of the public at large. See *T & V Assoc*, ___ Mich App at ___; slip op at 6. Plaintiffs offer only cursory treatment regarding whether they have a sufficient interest to seek a declaratory judgment, and plaintiffs make a much more in-depth argument regarding standing on the basis of a special injury, right, or a substantial interest. Given the similarity of the inquiries regarding the two theories of standing, and given that we have already concluded that plaintiffs cannot establish that they have standing on the basis of a special injury, right, or a substantial interest, we conclude that plaintiffs are not interested persons for purposes of a declaratory judgement.[9]

In conclusion, plaintiffs do not have standing to pursue a declaratory judgment regarding the enforcement of MCL 168.674(2) and MCL 168.765a(2).

Affirmed. Defendants may tax costs as the prevailing parties. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Kristina Robinson Garrett

---

[9] In light of our conclusion that plaintiffs are unentitled to seek a declaratory judgment because they are not "interested parties," we need not determine whether there is an actual controversy in this case.